**Harold H. GORDON and the Estate of Louis P. Begin, Plaintiffs,**

**v.**

**CITY OF WARREN et al., Defendants.**

**Civ. A. No. 4–72525.**

United States District Court,
E. D. Michigan, S. D.

May 6, 1976.

.Thomas D. Sherman, Detroit, Mich., for plaintiffs.

Robert J. Lord, Fair Haven, Mich., for City of Warren.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

PHILIP PRATT, District Judge.

This action arises as a result of a controversy between the plaintiffs, private land developers, and the defendants—the City of Warren, its Planning Commission and eight individual commissioners.[1] In September, 1969, the defendants herein sought and were granted an order by the Macomb County Circuit Court requiring the plaintiffs to demolish several multi-family residential buildings in the process of construction, which allegedly infringed upon a proposed highway right-of-way. The defendants were also ordered to halt all further construction or development on those properties.

---

1. Individual defendants include Jerome R. Schmeiser, Director of the Warren Planning and Urban Renewal Commission, and Commission members John R. Scrivo, George A. Petrie, James E. Decker, Charles R. Tefft, A. Thomas Winterfield, Kenneth Mackenzie, John M. Froling and Francisco Torre.

That order, and the legality of an underlying ordinance[2] upon which the defendants premised their action,[3] was appealed to the Michigan Court of Appeals. On January 2, 1971, that court held that the local ordinance was not authorized under any existing state enabling legislation and, therefore, was invalid.[4] That holding was affirmed by the Michigan Supreme Court,[5] which added that had there been enabling legislation on which to base such an ordinance, "the Warren zoning ordinance is unconstitutional on its face," for failing to provide any of the traditional safeguards required by due process.

Plaintiffs brought this action for damages under the Fourteenth Amendment, 42 U.S.C. § 1983 and § 1985 and malicious prosecution on October 2, 1974.[6] The defendants responded with a motion to dismiss three of the four counts. Prior to the date of the hearing the parties agreed that the defendants would withhold their motion, pending the filing of an amended complaint which has been filed. The amended complaint deletes the malicious prosecution count and defendants now move for summary judgment as to the three counts of the amended complaint.

The defendants argue that the cause of action is barred by the applicable Michigan statute of limitations and that there is failure to state a cause of action.[7]

The plaintiffs have also moved for partial summary judgment against the City of Warren on Count I of their amended complaint.

## I.

## APPLICABLE STATUTE OF LIMITATIONS

The initial issue is what statute of limitations is to be applied to the § 1983 and § 1985 claims of Counts II and III.

### A.

As the federal courts have often noted, none of the sections of the Civil Rights Act explicitly provide for any period of limitation for the bringing of an action. The courts, therefore, are instructed to look to the most analogous state statute of limitations. *O'Sullivan v. Felix*, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980 (1914). *See* Title 42, U.S.C. § 1988. Moreover, the stance of the courts is that for any particular factual event, the same state statute of limitations should control all Civil Rights Act counts, whether brought under § 1981, § 1983 or § 1985. *See Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968). Therefore, whatever state statute is chosen, that limitation will control both the § 1983 and § 1985 counts in this action.

Although the controlling rule—"to adopt the most analogous state statute of limitations"—is generally accepted by the federal judiciary, the Circuits have diverged in their application of this rule.

The Third Circuit approach is to apply the statute of limitations of the underlying tort or wrongful act. *See Howell v. Cataldi*, 464 F.2d 272 (3rd Cir. 1972); *Thomas v.*

---

**2.** Section 4.36 of the Warren Zoning Ordinance provided:

"4.36 Building Setbacks on Major Streets and Highways.
(a) No building or structure shall be erected or constructed within the area set down by the city's master thoroughfare plan.
(b) All setbacks, where required, shall be measured from the proposed right-of-way established by the city's master thoroughfare plan."

**3.** The position of defendants is that the said ordinance was not, in fact, the basis for the refusal to issue building permits and to stop the

work. The Court recognizes this area of dispute and will accept plaintiffs' allegation in that regard only for purposes of this motion.

**4.** *Gordon v. Warren Planning Commission*, 29 Mich.App. 309, 185 N.W.2d 61 (1971).

**5.** 388 Mich. 82, 199 N.W.2d 465 (July, 1972).

**6.** Jurisdiction is alleged under 28 U.S.C. § 1331(a) and 28 U.S.C. § 1343.

**7.** The defendants reasserted this defense again at oral argument.

*Howard,* 455 F.2d 228 (3rd Cir. 1972); *Orlando v. Baltimore & Ohio Ry.,* 455 F.2d 972 (3rd Cir. 1972).

The Second, Ninth and Tenth Circuits, however, have held that actions under § 1983 (and the other sections of the Civil Rights Act) are (1) governed by state statutes of limitations for state actions created by statute or (2) are governed by the general limitations period of the state (where the former does not exist). *See Rosenberg v. Martin,* 478 F.2d 520 (2d Cir. 1973); *Willis v. Reddin,* 418 F.2d 702 (9th Cir. 1969); *Crosswhite v. Brown,* 424 F.2d 495 (10th Cir. 1970).

The Fifth, Sixth and Seventh Circuits' decisions reflect indecision over the proper approach. *See,* e. g., *Shank v. Spruill,* 406 F.2d 756 (5th Cir. 1969), *contra* in *White v. Padgett,* 475 F.2d 79 (5th Cir. 1973); *Madison v. Wood,* 410 F.2d 564 (6th Cir. 1969); *Mulligan v. Schlachter,* 389 F.2d 231 (6th Cir. 1968); *contra* in *Garner v. Stephens,* 460 F.2d 1144 (6th Cir. 1972); *Jones v. Jones,* 410 F.2d 365 (7th Cir. 1965), cert. denied 396 U.S. 1013, 90 S.Ct. 547, 24 L.Ed.2d 505 (1970), *contra* in *Duncan v. Nelson,* 466 F.2d 939 (7th Cir. 1972), cert. denied, 409 U.S. 894, 93 S.Ct. 175, 34 L.Ed.2d 152 (1972).

Several Circuits have attempted to explain this lack of internal consistency by pointing out differences between statutes of limitations available from state to state. These efforts, on the whole, are unsatisfactory and afford no persuasive rationale why a circuit should not be internally consistent when entertaining actions under the Civil Rights Act provisions, much less explain why the federal judiciary should be so divided as to the proper approach in these cases.

The Eighth Circuit in *Reed v. Hutto,* 486 F.2d 534 (1973), after examining its prior decisions in *Savage v. United States,* 450 F.2d 449 (8th Cir. 1971), cert. denied 405 U.S. 1043, 92 S.Ct. 1327, 31 L.Ed.2d 585 (1972) (where the court "focused upon the character of the conduct underlying the civil rights violation in order to determine the most appropriate statute of limitations")

and *Glasscoe v. Howell,* 431 F.2d 863 (8th Cir. 1970) (where the court "focused not on the assault but on the statutory derivation of the civil rights claim as creating a new and different remedy . . .") admitted that the two approaches followed were not merely different but were basically inconsistent. 486 F.2d at 536. To date, however, the Eighth Circuit has not chosen between the two.

### B.

The Sixth Circuit has recently rendered a decision from which this Court infers a third approach. In *Marlowe v. Fisher Body,* 489 F.2d 1057 (6th Cir. 1973), the plaintiff, an employee of the defendant corporation, brought a § 1981 and Title VII action, alleging that he had been denied the right of advancement or promotion and of overtime in an arbitrary and capricious manner because he was a member of the Jewish faith. The amended complaint alleged various contractual violations by the defendant. In response to the apparent contention that the contractual nature of these charges required application of the Michigan six-year statute of limitations, the Court of Appeals said:

> "The fact that the amended complaint also referred to alleged breaches of contract (contract rights being specifically protected by § 1981) does not alter the fact that a deprivation of civil rights is primarily the violation of personal rather than property rights. Accordingly the Michigan three-year statute of limitations (M.C.L.A. § 600.5805(7)) relating to an action for damages for injuries to the person applies."

No citation of authority was given for this proposition; however, the rationale and phrasing is identical to that found in *Madison v. Wood,* 410 F.2d 564 (6th Cir. 1969) and *Krum v. Sheppard,* 255 F.Supp. 994 (W.D.Mich.1966), affd. 407 F.2d 490 (6th Cir. 1967), (the rationale of which was adopted in *Madison* ).

*Krum* involved an arrest by state authorities under color of state law, after the plaintiff refused to submit to a bridge

crossing search. The plaintiff, in a §§ 1983, 1985 action charged that one defendant officer filed a false complaint against him and that both defendants testified falsely at the preliminary hearings and trial, thereby depriving him of his civil rights. The district court analyzed the cause of action as follows:

"A deprivation of civil rights may, of course, involve an injury to property. However, even in a civil rights action where property has been damaged, the basis of the civil rights action is still the violation of personal rights. Indeed, if an injury to property were all that was involved, the plaintiff would be left to an action for trespass in the state courts. *Nonetheless, having decided to bring this action under the Civil Rights Act, the rights which the plaintiff claims were violated are in their very nature personal rights.* Moreover . . . plaintiff charges the defendants with conduct violative of the rights, privileges and immunities secured to him under the Constitution of the United States. This indicates quite clearly that the plaintiff's claim must be for 'injuries to the person' within the ordinary meaning of that term." [8] (Emphasis supplied).

Applying this rule, the district court applied § 609.13 of the Compiled Laws of Michigan, 1948 (now § 600.5805(7) of the revised state act), which provides a three-year period for "actions to recover damages for injuries to person and property. . . ."

This rationale was both approved of and applied in *Madison v. Wood, supra,* a § 1983 and 1985 action by a policeman for an allegedly unlawful demotion from Sergeant to Patrolman. It is clear from both *Krum* and *Madison* that the Sixth Circuit interprets the above-stated Michigan statute broadly to include much more than mere physical injuries to persons and more than an injury to specific property. The Court of Appeals therein established the rule that a wrong alleged under the Civil Rights Act

is a *constitutional wrong,* and that such a wrong is personal in nature. Therefore, at least with regard to such causes of action originating in Michigan, the Sixth Circuit has decided to abandon the Third Circuit approach of looking at the underlying wrongful act and will characterize all Civil Rights Act causes as "injuries to the person," applying the state statute of limitations most analogous to such characterization.

A similar characterization of the nature of Civil Rights Act causes can be seen in recent Fourth Circuit decisions. In *Almond v. Kent,* 459 F.2d 200 (4th Cir. 1972), a § 1983 action which involved purported physical beatings of the plaintiff by Virginia police the Court said:

"We agree that, to the extent that Almond's § 1983 complaint alleges a violation of his constitutional rights resulting in personal injuries of the type that would be actionable at common law, the Virginia two-year period unquestionably applies. *But this is so, not because there was a right of recovery at common law but because there was a violation of a constitutional right not to be beaten.* We think it follows that the Virginia two-year period applies to all other rights which may be redressed under § 1983 by the recovery of money damages. Section 1983 creates a federal cause of action, unknown at common law, '[for] the deprivation of any rights, privileges or immunities secured by the Constitution and laws (of the United States) . . .' This right of recovery depends upon federal considerations, and it is not one which is concerned with the archaic concepts of survivability of the common law . . . *In the broad sense, every cause of action under § 1983 which is well-founded results from 'personal injuries.'*" (Emphasis supplied).

Thus, a third approach has been added to the existing two, and that approach, as

8. 255 F.Supp. at 997. It is noteworthy that in seeking to characterize the cause of action, the court looked to Michigan state law. *Id.* at 998.

outlined above, is the current stance of the Sixth Circuit.

Commentators may rightfully criticize a unitary federal judicial system which allows three distinct and contradictory approaches to limitations on federal actions.[9] Indeed, there are serious aspects of injustice in applications of state law to federal suits which breed inconsistency and misunderstanding over applicable limitations periods.[10]

■■■ However, to date neither Congress nor the Supreme Court has ventured to establish a federal limitations period for the Civil Rights Act. Until such action is taken, it is incumbent on this Court to follow the current approach of the Sixth Circuit. The Court, therefore, restates that in such § 1983, § 1985 actions, deprivation of civil rights is a personal injury and the analogous state statute of limitations applicable to this action is the three-year period under M.C.L.A. § 600.5805(7).

### C.

Plaintiffs, however, have also incorporated in their complaint a count premised on a Fourteenth Amendment due process violation through the federal question jurisdictional statute, 28 U.S.C. § 1331. The Sixth Circuit appears to have accepted the validity of such a jurisdictional basis, *Amen v. City of Detroit,* 532 F.2d 554, Sixth Cir. 1976, where other circuits have hesitated, *see Brault v. Town of Milton,* 527 F.2d 730 (2nd Cir. 1975).

Although the Sixth Circuit in *Foster v. City of Detroit,* 405 F.2d 138 (1968), conditionally accepted the city's argument that the Michigan three-year statute applied to such "federal question" suits, it found a continuing wrong which eliminated the need to make an ultimate holding on the limitations question.

This Court, however, must make such a determination. Unfortunately it knows of no decision which provides guidance on this question.

■■■ In the context of this complaint, wherein a Fourteenth Amendment "federal question" is juxtaposed with § 1983 and § 1985 actions where all three counts are premised on the same underlying facts, this Court believes it would be inconsistent to apply a statute of limitations for the first count different from that applied to the latter two counts. This is particularly so in this situation wherein the 1983 and 1985 actions derive from the alleged Fourteenth Amendment due process violation. The Court, therefore, will also apply the Michigan three-year statute of limitations to Count I.

## II.

### TOLLING OF THE STATUTE

The plaintiffs contend that if the three-year statute is applicable, that nevertheless this cause of action is not barred because the statute was tolled by the pendency of the proceedings in state court. They premise this argument on M.C.L.A. § 600.-5856(2) which provides:

> "The statutes of limitations are tolled when . . . (2) jurisdiction over the defendant is otherwise acquired . . ."

This statute, they argue, "has . . . been interpreted to mean that the statute does not run between the parties when they are engaged in litigation arising from the same transaction and occurrence."

■■■ The Court believes that is an overly broad generalization, if not misinterpretation, of the tolling statute.[11] The proper interpretation and application of M.C.L.A. § 600.5856(2) is discussed at length in *Stewart v. Michigan Bell,* 39 Mich.App. 360, 197 N.W.2d 465 (1972). That Court, in turn,

---

9. *See* Note, A Limitation on Actions for Deprivation of Federal Rights, 68 Colum.L.Rev. 763 (1968).

10. *Id.*

11. It is proper for a federal court to consider state tolling statutes when it is required to apply a state statute of limitations in a Civil Rights Act case. See *Johnson v. Railway Express Agency,* 421 U.S. 454, 463–464, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

referred to the pronouncement of the Michigan Supreme Court in *Buscaino v. Rhodes,* 385 Mich. 474, 189 N.W.2d 202 (1971), which stated:

"What then is the meaning to be extended to MCLA § 600.5856? We find that CL 1948 § 609.19 (Stat.Ann. § 27.611) was repealed by the adoption of the Revised Judicature Act. That statute provided: 'If, in any action, duly commenced within the time limited in this chapter, and allowed therefor, the writ or declaration shall fail of a sufficient service or return, by any unavoidable accident, or by any default or neglect of the officer to whom it is committed, or if the writ be abated or the action otherwise avoided or defeated, by the death of any party thereto, or for any matter of form, or if after a verdict for the plaintiff, the judgment shall be arrested, or if the judgment for the plaintiff shall be reversed on a writ of error, the plaintiff may commence a new action for the same cause, at any time within 1 year after the abatement or other determination of the original suit, or after reversal of the judgment therein; and if the cause of action does by law survive, his executor or administrator may, in case of his death, commence such new action within the said 1 year.' "

The Court in *Buscaino, supra,* concluded that:

"M.C.L.A. § 600.5856 *merely provides a substitute for the repealed CL 1948 § 609.19.* It deals only with prior lawsuits between the parties *which have not been adjudicated on the merits of the action.*" (39 Mich.App. at 366, 189 N.W.2d at 205). (Emphasis added).

The Committee Comment to M.C.L.A. § 600.5856 reads:

"In the event of the dismissal, on some ground other than on the merits (as for example—lack of jurisdiction over the subject matter) of an action in which jurisdiction over the defendant is acquired, the period of time from the time of service or the acquisition of jurisdiction over the defendant until dismissal will not count as a part of the time of limitation, for during such time the statute has been tolled. Subsections (1) and (2)."

The Michigan court, therefore, interprets the tolling statute rather narrowly, to cover instances where litigation was commenced but dismissed on grounds other than a determination on the merits. Such was not the case here. The merits of the dispute were litigated and determined at three levels of the state judicial system. Plaintiffs now seek an additional remedy for their original cause of action. M.C.L.A. § 600.-5856 is therefore inapplicable and the statute was not tolled by the state court proceedings.

### III.

### THEORY OF A CONTINUING WRONG

Applying the three-year statute, the defendants contend that the period commenced no later than January 12, 1971, the date of decision by the Michigan Court of Appeals. If this were true, over three years had elapsed prior to the filing of this action and it would be barred by M.C.L.A. § 600.5805(7).

The plaintiffs, however, vehemently urge that the unlawful restrictions placed on the use of their land by the city continued well past the Court of Appeals decision and were, in fact, only definitively lifted by the state supreme court ruling. Therefore, they argue that the period ran from July, 1972, and that their filing was timely.

■ It is clear that where a "continuing wrong" is involved, the statute will not run until that wrong or "continuing trespass," as the courts refer to it, is terminated or removed. *Marlowe v. Fisher Body,* 489 F.2d 1057 (6th Cir. 1973); *Defnet v. Detroit,* 327 Mich. 254, 41 N.W.2d 539 (1950).[12] Any restraint on the plaintiffs pursuant to the invalid zoning ordinance would have been

---

12. *See also Foster v. City of Detroit,* 405 F.2d 138 (6th Cir. 1968).

unlawful and would constitute a "continuing wrong" until voluntarily removed by the defendants or by order of the court.

In support of their position the plaintiffs stress the defendants' act of appealing to the state supreme court. They claim that the filing of leave to appeal by the defendants: "obviously cast a cloud over the entire construction project." It is this "restriction" on their plans which they claim was not disposed of until the Michigan Supreme Court decision.[13] It is the opinion of this Court, however, that the possibility of reversal by the state supreme court is not a restraint by the defendants sufficient to be a "continuing wrong." When the Court of Appeals reversed the trial court, all restraint to the construction project based on the invalid ordinance were lifted, including the requirements specified by that ordinance and the Circuit Court injunction. It was not necessary for the city to remove the offending ordinance from its books for its effect to be negated.[14]

Plaintiff, however, also argues that a stop order had been placed on their construction project and despite the ruling of the Michigan Court of Appeals, it was never revoked.[15] Nor did the City issue any new work permits authorizing recommencement of construction until 1972. It is the plaintiffs' contention that these actions or "non-actions" on defendants' part were designed to obstruct construction in the proposed right-of-way area notwithstanding the judicial determination that such an action was both invalid and unlawful.[16]

The defendants in opposition to this claim have filed an extensive collection of affidavits and records of the Warren Planning Commission meetings at which time the Gordon-Begin project was discussed, in a supplementary motion for summary judgment. It is the defendants' contention that these exhibits clearly indicate legitimate grounds for the Planning Commission's action other than the zoning ordinance which was later held invalid. The plaintiffs by brief respond, not contesting the veracity or reliability of the attached minutes of the Planning Commission meetings,[17] but rath-

13. The plaintiffs provide extensive citation to recent decisions of this district, including *Madison Realty v. Detroit,* 315 F.Supp. 367 (E.D. Mich.1970), *Silverstein v. Detroit,* 335 F.Supp. 1306 (E.D.Mich.1971), and *Amen v. Dearborn,* 363 F.Supp. 1267 (E.D.Mich.1973). These cases, held that certain wrongful actions by a city (including denial of building permits, encouragement of property sales to the city by stating that later sales would bring lower prices, discouraging repairs, arbitrary and selective code enforcement, poor maintenance of adjacent city lots, misrepresentations as to the availability of mortgage insurance), could constitute a "continuous taking" by the city. Here, however, aside from the "stop order" issue discussed *infra,* the only action of the city taken against the builders was to appeal the adverse ruling of the Michigan Court of Appeals. This Court does not believe that *Madison, Silverstein* and *Amen* apply to the act of appealing a court determination. A city should not be punished for availing itself of appellate review procedures, and this is all that the defendant did in this instance.

14. Plaintiffs also argue that the fact that "the mortgage lender would not advance additional building funds until such time as the cloud created by the continued litigation was removed" was the "most important" restrictive act and that it was "caused" by the defendants' appeal. The Court finds no merit in such a contention. If the plaintiffs were financially restricted, it was the result of an abundance of caution on the part of their credit source. The defendants did not ask the mortgage lender to withhold funds. The causal relation is tenuous at best and certainly cannot be relied on by the plaintiffs to support their argument of wrongful conduct on defendants' part sufficient to constitute a "continuous taking."

15. Plaintiffs' brief, page 8.

16. *See* affidavit of Harold H. Gordon.

17. Indeed although the plaintiffs opposed the motion for summary judgment on the ground, *inter alia,* that there were remaining issues of fact, at oral argument counsel for plaintiffs admitted that there were no factual disputes as to the records of the Planning Commission's meetings—they were conceded to be true. Rather, the plaintiffs' counsel argued that there

er, arguing that they support their claim that the zoning ordinance *was* consciously and deliberately applied against the project.

Since the Court has ruled above that the applicable statute of limitations precludes an action for the *initial* application of the invalid ordinance, the only issue (which is only peripherally addressed by the parties) is whether the *stop order* which admittedly was imposed, could have been validly continued after the Court of Appeals invalidation of the future right-of-way ordinance. If not, then its continued imposition could arguably constitute a "continuing wrong." However, *any* valid reason for continuing the stop order would preclude such an assertion.

■ The exhibits which are part of this record clearly disclose that the stop order was imposed because of the failure of Gordon-Begin to comply with several of the site plan conditions, in addition to the future highway setback condition.[18] The failure of Gordon-Begin to comply with the conditions requiring construction of a property-line wall before construction of the apartments commenced was sufficient in and of itself for the City to issue the stop order. Nor have the plaintiffs by affidavit or otherwise shown that they subsequently complied with that condition of the site plan. The Court therefore rejects the plaintiffs' contention that the "stop order" in effect after the Court of Appeal's ruling constituted a continuing wrong. Finding no continuing wrong the Court concludes that the plaintiffs' claims are precluded by the statute of limitations and must be dismissed.

## IV.

## FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

The Court, while finding sufficient reason to dismiss this action as barred by the statute, *supra,* is also of the opinion that even if a different statute of limitations was applied or plaintiffs "tolling" or "continuous wrong" theories were accepted, nevertheless this action must be dismissed as failing to state a claim entitling the plaintiffs to relief.[19] The Court in so holding relies primarily on the decision of the Second Circuit Court of Appeals in *Brault v. Town of Milton,* 527 F.2d 730 (1975).

The factual circumstances in *Brault* were remarkably similar to those at bar. The Town of Milton had secured a temporary injunction prohibiting the Braults from using their land as a trailer park, predicating the injunction on a town zoning ordinance. Four years later the Vermont Supreme Court vacated the injunction, finding the zoning ordinance to be invalid for procedural irregularities. After the state supreme court decision the Braults filed a suit against the town in federal court. The plaintiffs' cause of action there was based alternatively on 42 U.S.C. § 1983 and 28 U.S.C. § 1331, asserting a Fourteenth Amendment due process question.

■ The Court of Appeals panel initially held that while § 1983 does not authorize a suit against a municipality, *City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), the federal court did have jurisdiction to entertain a claim

---

were disputes as to the proper inferences and conclusions which should be drawn from those minutes. Such differences are not those of genuine factual issues but are contested legal arguments which can be properly decided on a motion for summary judgment.

18. Minutes of the January 13, 1969 Planning and Urban Renewal Commission meeting disclose that the Commission approved the revised site plan for the Gordon-Begin project with ten original conditions and one additional condition "that two buildings in the M–53 right-of-way be moved to the west outside the

right-of-way." The last condition was based on the results of the show cause hearing held that date and discussion with Gordon-Begin's attorney at the Commission's meeting. But the ten original conditions required, *inter alia*: that part of a six foot wall be built along the north-south section before the construction of the apartment buildings.

19. This defense was raised in an earlier motion to dismiss by the defendant and is alluded to, although for different reasons, in their present motion for summary judgment.

against the town under § 1331, citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). However, it subsequently granted an application for rehearing of the appeal, and the Court of Appeals *en banc* then held that it was not necessary to resolve the Fourteenth Amendment jurisdictional question since the complaint construed most favorably for Brault "had to be dismissed for failure to state a claim entitling them to relief." The court stated:

> "The gist of the Braults' complaint is that the Town violated their due process rights by invoking the processes of the Vermont state courts to enforce an ordinance which turned out to be invalid. Absent a claim of malice—and no such claim is stated here—a plaintiff's use of judicial process for enforcement of an alleged right is the very antithesis of denial of due process. The court's function is to assure that no party will be deprived of property without satisfying the fundamentals of due process, including the requirement that the defendant be furnished with notice and a statement of the claim against him and the opportunity to prepare and present a defense, a hearing, the right to confront and cross-examine witnesses, and findings. *Groppi v. Leslie,* 404 U.S. 496; 500–501, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972). It is undisputed that all of these requirements were met in the Town's suit against the Braults, which resulted in findings and an order by the Chancellor of the Chittenden County Court upholding and enforcing the zoning ordinance in dispute. That decision, it is true, was later found by the Vermont Supreme Court to be erroneous because of procedural defects in the adoption of the zoning ordinance in issue.

However, the Fourteenth Amendment does not protect a litigant against judicial error, *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). Thus, none of the proceedings in the Vermont courts denied the Braults due process of law. And if the Braults' rights under the Due Process clause were not violated in the Vermont courts, the Town could not have violated their due process rights by bringing them into those courts. If every unsuccessful lawsuit were to be viewed as a violation of due process, bona fide litigants would be deterred from invoking the courts to adjudicate their claims, since a plaintiff would risk substantial damages if his claim should not be upheld. Not even the courts of England which, unlike our own, impose very substantial costs upon the unsuccessful litigant, have permitted recovery of damages for a civil suit brought in good faith; indeed, they have been reluctant to impose any liability at all for wrongful institution of civil proceedings."

This Court finds the reasoning of the Second Circuit on this point persuasive. There is no serious allegation of malicious conduct on the part of the City or Commission.[20] Indeed the record indicates the Commission first attempted to secure voluntary compliance with the requirements of the site plan and when it could not do so through negotiation it felt compelled to resort to litigation. Nor did the City or Commission have any indication prior to the Court of Appeals ruling that the set-back zoning ordinance would be found invalid. Rather, the Commission and City merely acted to enforce the then-valid ordinances and codes which it was duty-bound to enforce. This Court cannot construe such action as a "deprivation of rights secured by the Constitution" under § 1983 [21] or a "deni-

---

20. While the plaintiffs alleged "malicious action" on the part of the Commission in their amended complaint, at oral argument they conceded that the only "malice" involved was the Commission's act of applying a zoning ordinance which ultimately proved to be invalid. It is clear from the context of *Brault, supra,* that this was not "malice" in their use of the term.

21. In *Brault, supra,* the § 1983 cause of action was previously disposed of under the holding in *City of Kenosha v. Bruno, supra,* as the action had been brought solely against the city. In the present case, however, the § 1983 and § 1985 actions were also directed against the Planning Commission and the individual commissioners. This Court, however, is of the opinion that the *Brault* holding applies equally

al of due process" under the Fourteenth Amendment. For these reasons the Court holds that the complaint must be dismissed for failure to state a claim for which relief may be granted by this Court.

Accordingly, the defendants' Motion for Summary Judgment is granted and the plaintiffs' cross-motion for Partial Summary Judgment is denied.

IT IS SO ORDERED.

to the §§ 1983 and 1985 actions. Both of these causes of action derive from the alleged Fourteenth Amendment violation under Count I, and if there is no claim for which relief may be given on the underlying constitutional ground, then the statutorily defined derivative grounds are equally without support. The Court, therefore, finds that Counts II and III do not state a claim for which relief may be granted.