Peter W. **GUILDAY**, Plaintiff,

v.

**DEPARTMENT OF JUSTICE** et al., Defendants.

Civ. A. No. 4578.

United States District Court, D. Delaware.

May 26, 1978.

---

See also, D.C., 385 F.Supp. 1096.

Robert F. Stewart, of Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiff.

James W. Garvin, Jr., U. S. Atty., Wilmington, Del., Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., Anthony J. Steinmeyer and Paul A. Gaukler, Dept. of Justice, Washington, D. C., for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Presently pending before the Court is the Defendants' Motion to Dismiss certain parts of the complaint in this case. Plaintiff, Peter Guilday, is an investigator in the Philadelphia Office of the Immigration and Naturalization Service ("INS") of the United States Department of Justice. On February 8, 1973, he filed a *pro se* complaint in this Court,[1] alleging that defendants had discriminated against him in his employment because of his race (white) and his creed (Christian), and that he had been denied promotions in reprisal for previous discrimination complaints which he had filed with the INS. Guilday requested relief in the form of a retroactive promotion with backpay. The defendants named in the complaint include the Department of Justice, the Immigration and Naturalization Service, and five individuals who are or were officials or employees of the INS.[2]

Prior to the time Guilday filed his complaint in this case, and during the pendency of this suit, Guilday has pursued adminis-

1. In January, 1974, this Court appointed counsel for Guilday pursuant to 42 U.S.C. §§ 2000e–5(f)(1), 2000e–16(d).

2. The individuals whom Guilday named in his complaint are identified as follows in the caption of the complaint: Raymond F. Farrell, Commissioner Immigration Service; E. A. Loughran, Associate Commissioner; Bertram Bernard, District Director Immigration Philadelphia; Mitchell S. Solomon, Assistant Director; Aud L. Tadlock, Supervisory Investigator.

trative remedies in connection with his claims of discrimination and reprisal. In 1968, Guilday filed several complaints of discrimination, alleging, *inter alia,* that his supervisors had failed to promote him because of his race and creed. A hearing on the complaints was held in July, 1969. Both an INS hearing officer and a Department of Justice complaint adjudication officer ruled against Guilday, who then appealed to the U. S. Civil Service Commission. In January, 1970, the Commission's Board of Appeals and Review ruled that there was no support for Guilday's claim that he had failed to advance because of his race or religion.

In August, 1972, Guilday filed another charge of discrimination with the INS, alleging that he had been denied promotion because of the prior discrimination complaints which he had filed. A hearing on the complaint was held in February, 1973. Both a complaints examiner and a Department of Justice complaint adjudication officer ruled against Guilday. Guilday then appealed to the Civil Service Commission, but he subsequently withdrew this appeal.

In February, 1974, Guilday filed a complaint with the INS alleging further reprisal by his supervisor in connection with his earlier administrative complaints. In March, 1974, the INS denied Guilday's claim and informed him that this denial constituted final action by the INS in regard to Guilday's complaint of reprisal.[3]

The Motion to Dismiss which is currently before the Court[4] is apparently an attempt to "clean up" the complaint by eliminating

some of the issues in the case. Defendants allege that the claims of racial and religious discrimination which were the subject of Guilday's 1968 administrative complaints should be dismissed; that all defendants should be dismissed from the suit and that the Attorney General of the United States should be substituted as the sole defendant; and that a claim for punitive damages should be dismissed. These allegations will be discussed in turn.

## I. DISMISSAL OF CLAIMS BASED ON 1968 ADMINISTRATIVE COMPLAINTS

■ Defendants urge that the Court must dismiss those claims which are based on Guilday's 1968 administrative complaints, since there is no Title VII remedy for those claims. Before the 1972 amendments to § 717 of the Civil Rights Act of 1964,[5] Title VII provided no remedy for federal employees who had suffered employment discrimination. However, the Title VII remedy now provided for employment discrimination against federal employees is available retroactively to a complainant whose claim was pending on March 24, 1972, the date amended § 717 became effective, even if the claim arose before that date. *See, e. g., Sperling v. United States,* 515 F.2d 465, 473–474 (3d Cir. 1975), *cert. denied,* 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976); *Hackley v. Roudebush,* 171 U.S.App.D.C. 376, 380 at n. 4, 520 F.2d 108, 112 at n. 4 (1975); *Brown v. General Services Administration,* 507 F.2d 1300, 1304–1306 (2d Cir. 1974), *aff'd. on other*

---

**3.** The matters alleged in the 1968 administrative complaints and the 1972 administrative complaint have been brought before this Court by Guilday's original complaint in this case. The matters alleged in the 1974 administrative complaint have been brought before the Court by amendment to the complaint.

**4.** This is the second Motion to Dismiss which defendants have filed. In April, 1973, defendants filed a Motion to Dismiss alleging lack of subject-matter jurisdiction and failure to state a claim upon which relief could be granted. In a letter memorandum submitted in support of the Motion to Dismiss, dated June 1, 1973, the defendants argued that Guilday's claim was

one of persecution rather than discrimination, and that the 1972 amendments to Title VII did not authorize judicial review of such a claim. The Motion to Dismiss was denied after a hearing.

In January, 1974, the defendants moved for summary judgment in this case. In February, 1975, Guilday filed a Motion for Partial Summary Judgment based on his claims of reprisal. In May, 1975, the Court ordered that the Motions for Summary Judgment should be continued until the plaintiff had an opportunity to complete necessary discovery.

**5.** 42 U.S.C. § 2000e–16.

*grounds,* 425 U.S. 820, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1976); *Koger v. Ball,* 497 F.2d 702, 706 (4th Cir. 1974); *Petterway v. Veterans Administration Hospital, Houston, Texas,* 495 F.2d 1223, 1224 n. 2 (5th Cir. 1974). *Cf., Brown v. General Services Administration,* 425 U.S. 820, 824, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Thus, the initial question which the Court must decide is whether Guilday's 1968 administrative claims were "pending" on March 24, 1972.

██ The last administrative action with respect to Guilday's 1968 administrative complaints occurred when the Civil Service Commission's Board of Appeals and Review ("BAR") rendered its decision on January 22, 1970. The BAR decision included the statement, "Civil Service Regulations provide that the decision of the Board is final and there is no further right of appeal." Thus, it would appear that plaintiff's 1968 complaints were no longer "pending" in 1972. However, Guilday points out that the Civil Service regulations provided that the BAR might reconsider a decision under certain circumstances.[6] Since Guilday never exhausted this possibility, he argues that his complaints should be considered as

"pending" in 1972 for the purposes of Title VII.

The Court concludes that Guilday's 1968 administrative complaints cannot be said to have been "pending" at the time the 1972 amendments to Title VII became effective. The Civil Service Commission regulations specifically provided that the BAR decision was "final", and that there was no further right to appeal. *See,* 5 C.F.R. § 713.234 (1970). Any reconsideration was discretionary with the Commissioners and could be granted only on certain limited grounds.[7] Guilday has not argued that his case meets any of the criteria for reconsideration by the BAR. Furthermore, Guilday never requested reconsideration by the BAR of its 1970 decision at any time between January, 1970 and March, 1972.[8] In light of these considerations, it would be unreasonable to conclude that Guilday's claim continued to be "pending" in March, 1972.[9]

██ Guilday argues alternatively that even if the claims of racial and religious discrimination raised in his 1968 administrative complaints must be dismissed under Title VII, they survive as claims based on 42 U.S.C. § 1981 and the Fifth Amendment.

---

**6.** 5 C.F.R. § 713.235 (1970) provided:

The Commissioners may, in their discretion, reopen and reconsider any previous decision when the party requesting reopening submits written argument or evidence which tends to establish that:

(a) New and material evidence is available that was not readily available when the previous decision was issued;

(b) The previous decision involves an erroneous interpretation of law or regulation or misapplication of established policy; or

(c) The previous decision is of a precedential nature involving a new or unreviewed policy consideration that may have effects beyond the actual case at hand, or is otherwise of such an exceptional nature as to merit the personal attention of the Commissioners.

**7.** *See,* note 6, *supra.*

**8.** *Contrast, Sperling, supra,* and *Hackley, supra,* in which the administrative complaints were still under agency consideration in March, 1972, and *Brown, supra,* and *Koger, supra,* in which the administrative complaints apparently were under consideration by the BAR in March, 1972.

**9.** Guilday appears to argue that his claim should be considered "pending" in 1972 because he was not informed of the possibility of reconsideration at the time of the 1970 "final" decision of the BAR. However, the Civil Service Commission regulations contained no requirement that an individual be given notice of the possibility of reconsideration. *Compare, Spencer v. Roudebush,* 443 F.Supp. 149, at 151 (D.Del., 1977). Reconsideration by the BAR was not a prerequisite to filing of a suit in federal court. Finally, a conclusion that the Commission was required to give notice of the possibility of reconsideration and that the claims of those who were not so notified could be considered to have been "pending" in 1972 would open a "Pandora's Box" of administrative rulings made many years ago, which would now be subject to challenge. *Compare, Spencer, supra* 443 F.Supp. at 152. For these reasons, the Court would be reluctant to adopt Guilday's interpretation of the term "pending". In any event, the circumstances referred to in the text of the opinion convince the Court that Guilday's claim could not be said to be "pending" in 1972 for the purposes of this particular case.

Guilday's complaint does not refer to either of these grounds. However, this omission is not fatal to his claim. *See, Bowers v. Campbell,* 505 F.2d 1155, 1157 n. 2 (9th Cir. 1974). A complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Furthermore, *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *See, Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Artysiewicz v. Local Union No. 184,* Civ.A. No. 77–488 (D.Del., filed February 2, 1978). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Farmers Bank of the State of Delaware v. Bell Mortgage Corp.,* Civ.A. No. 76–122, slip op. at 2 (D.Del., filed April 25, 1978).

The Court concludes that the allegations of Guilday's 1968 administrative complaints, which were incorporated into his complaint in this case, would be sufficient to state claims under 42 U.S.C. § 1981 and the Fifth Amendment. Several courts have recognized that § 1981 can support a cause of action by a federal employee who alleges employment discrimination on the grounds of race. *See, Bowers v. Campbell, supra; Petterway v. Veterans Administration Hospital, supra. Cf., Penn v. Schlesinger,* 490 F.2d 700 (5th Cir. 1973), *rev'd. on rehearing,* 497 F.2d 970 (5th Cir. 1974), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). Furthermore, the Third Circuit has held that a complaint which alleges violations of Fifth Amendment rights states a claim upon which relief may be granted.

*See, United States ex rel. Moore v. Koelzer,* 457 F.2d 892 (3d Cir. 1972).[10]

▪ However, defendants point out that any claim for relief under § 1981 and the Fifth Amendment would be barred by the statute of limitations. Since there is no federal statute of limitations for causes of action under § 1981, the appropriate limitations period must be determined by reference to state law. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). It has been held in this district that civil rights actions based on 42 U.S.C. § 1981 are governed by Delaware's three-year statute of limitations, 10 *Del.C.* § 8106. *Marshall v. Electric Hose and Rubber Co.,* 68 F.R.D. 287, 293 (D.Del.1975). The same limitations period would presumably apply to a Fifth Amendment claim which was grounded on the same underlying facts as the statutory claim. *See, Gordon v. City of Warren,* 415 F.Supp. 556, 561 (E.D.Mich.1976); *Weldon v. Board of Education of the School District of the City of Detroit,* 403 F.Supp. 436 (E.D.Mich.1975). *Cf., Kittrell v. City of Rockwall,* 526 F.2d 715 (5th Cir.), *cert. denied,* 426 U.S. 925, 96 S.Ct. 2636, 49 L.Ed.2d 379 (1976). Defendants argue that the claims asserted by Guilday in 1968 must have arisen more than three years before February 8, 1973, the date on which the complaint in this case was filed.[11]

Guilday denies that his § 1981 and Fifth Amendment claims are time-barred. According to Guilday, the failure of the INS to promote him on racial and religious grounds is the result of an agency-wide policy of discrimination, which has continued over a period of years. He argues that the racial and religious discrimination which he alleged in his 1968 administrative

---

**10.** Defendants argue that the Court should not conclude that the complaint states claims under § 1981 and the Fifth Amendment, since all parties have treated this case as a Title VII suit until now. However, Guilday's complaint in this case does not clearly state the provisions under which he is suing. While defendants have been free to explore Guilday's theory of the case since this suit was filed in 1973, they did not submit any interrogatories until March, 1977. Plaintiff's Responses to Defendants'

First Set of Interrogatories, filed in June, 1977, reveal that Guilday bases some of his claims on 42 U.S.C. § 1981.

**11.** Guilday's filing of voluntary administrative complaints did not toll the three-year statute of limitations. *See, Johnson v. Railway Express Agency, Inc., supra; Jenkins v. General Motors Corporation,* 354 F.Supp. 1040, 1045 (D.Del. 1973).

complaints can be characterized as a continuing violation, rather than as discrete acts of discrimination.

■ Allegations of a continuing discriminatory failure to promote have been considered by many courts to constitute a claim of a "continuing violation" under Title VII or § 1981. *See, e. g., Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 246 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Clark v. Olinkraft, Inc.,* 556 F.2d 1219 (5th Cir. 1977), *cert. denied,* 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978). *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 348 (10th Cir. 1975); *Corbin v. Pan American World Airways, Inc.,* 432 F.Supp. 939, 944 (N.D.Cal.1977); *Stallings v. Container Corp. of America,* 75 F.R.D. 511, 515 (D.Del.1975); *Mack v. General Electric Co.,* 329 F.Supp 72, 77–78 n. 6 (E.D. Pa.1971). In the case of a continuing violation, a plaintiff may file charges or institute an action at any time during which the alleged violation has taken place. Such a charge or action will not be barred by the applicable statute of limitations, even though some of the acts complained of occurred outside of the limitations period.

See, *Wetzel, supra* at 246; *Rich, supra* at 348 n. 15; *Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, 77, 478 F.2d 979, 987 (D.C.Cir.1973).[12]

It is not clear from the face of Guilday's complaint in this case that he actually alleges a continuing violation. The complaint consists largely of a description of the administrative complaints which Guilday filed and the events surrounding the processing of those complaints. The complaint nowhere states that the discrimination complained of continues "to the present" or that the INS promotion system as a whole is discriminatory.[13] However, the administrative record indicates that Guilday alleged a continuing discriminatory failure to promote on grounds of race and religion in the course of the hearing on his 1968 administrative complaints.[14] The 1968 complaints necessarily dealt with events prior to the fall of 1968. However, the principle that *pro se* complaints should be read liberally might persuade the Court to interpret references to the 1968 administrative complaints as an attempt by Guilday to reassert the claim of continuing racial and religious discrimination as of 1973.[15]

12. However, monetary relief granted in connection with a continuing violation may be confined to the damages suffered within the appropriate limitations period. *See, e. g., Rich, supra,* at 348; *Allen v. Amalgamated Transit Union, Local 788,* 415 F.Supp. 662, 666 (E.D.Mo. 1976).

13. While Guilday alleges in paragraph 6 of his complaint that the Government "has engaged in a pattern and practice of resistance to the full enjoyment of his equal employment rights", the context indicates that this allegation relates to the Government's allegedly faulty processing of Guilday's administrative complaints, rather than to discrimination on grounds of race and religion.

14. Defendants argue that the allegations of the 1968 administrative complaints relate only to discrimination in the New York District Office of INS, and that the discrimination could not be continuing in nature since Guilday was subsequently transferred to other INS offices. However, a careful review of the administrative record persuades the Court that Guilday alleged and argued in connection with his 1968 administrative complaints that discriminatory policies were promulgated centrally by the INS and operated in a continuing manner on a na-

tionwide basis. *See, e. g.,* U.S. Civil Service Commission, Record on Appeal of Peter Guilday [1968 administrative complaints], at 47, 64–66, 70–72. (Pleading Item Number 91A).

15. Guilday's responses to the defendants' first set of interrogatories do not resolve the question of what the allegations of his complaint mean. In response to Interrogatory 20, Guilday states that he contends that defendants have ·engaged in a continuing pattern of discrimination and reprisal against him in connection with his repeated efforts to secure promotions and reassignments in the INS since 1963. However, in his response to Interrogatory 9, Guilday states:

I believe that in the case of my application for the position of Investigatory Trainee in the New York District Office in 1963, the initial denial of that application resulted from racial and religious discrimination. With respect to each application I submitted pursuant to vacancy announcements under the Merit Promotion Selection and Reassignment Plan since 1969, I believe that those applications were denied as and because of reprisals taken against me for filing and pursuing discrimination complaints with the INS, the Civil Service Commission, and in court.

■ Assuming, arguendo, that the Court might find that Guilday had alleged continuing racial and religious discrimination in his complaint in this case, it concludes that he can have no valid claim under § 1981 or the Fifth Amendment. The Supreme Court has held that when Congress amended Title VII to include protection for federal employees, it intended to preempt all other remedies for employment discrimination against federal employees. *Brown v. General Services Administration, supra,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402. Guilday filed his complaint in 1973, almost a year after the 1972 amendments to Title VII became effective. If Guilday intended to allege that the INS maintained a discriminatory system of promotion which operated continuously throughout the 1960's and into the early 1970's, he was required to make this claim under Title VII.[16]

■ Although the Court concludes that Guilday has no viable claim under § 1981 or the Fifth Amendment, the question remains whether he has a claim under Title VII for a continuing violation which would incorporate the claims of his 1968 administrative complaints. A federal employee who sues under Title VII is required to present his claims to an administrative agency and to exhaust his administrative remedies. *See, Ettinger v. Johnson,* 518 F.2d 648, 652 (3d Cir. 1975). Guilday filed three sets of administrative complaints which form the basis for his claims in this case. As discussed *supra,* this Court cannot consider Guilday's 1968 administrative complaints since they were not "pending" at the time of the 1972 amendments. The 1974 administrative complaint appears to be addressed solely to a claim of reprisal, based on an appraisal form executed by Guilday's supervisor in the Philadelphia office of the INS. There is no allegation of a failure to promote Guilday on racial or religious grounds.

However, there is some question as to the content of Guilday's 1972 administrative complaint. Guilday himself was quite emphatic that the 1972 complaint was addressed to reprisals for prior discrimination complaints, rather than discrimination on the grounds of race or religion. Guilday stated several times during the course of the administrative hearing on the 1972 complaint that he intended to address only the matter of reprisal. *See,* Transcript of hearing held at United States Immigration and Naturalization Service . . . Philadelphia, Pa., February 15, 1973, at 7–10, 34, 43–44, 59, contained in U.S. Civil Service Commission, Record accompanying 1972 administrative complaint (Pleading Item Number 7). Guilday states in his complaint in the present case that the 1972 administrative complaint "was *NOT* basically *Religion* nor *RACE,* but *WAS* one of *persecution.* (Emphasis in original).[17]

However, there are some indications that the INS and the officers who ruled on Guilday's 1972 administrative complaint considered the questions of racial and religious

This response suggests that the discriminatory failure to promote alleged by Guilday was not continuing in nature, but occurred in two stages and resulted from two different sets of motives. Finally, in his response to Interrogatory 23, in which he was asked to identify the acts or omissions by INS which constituted the basis of his complaint, Guilday classifies those acts into three different categories and assigns a discrete time period to each. This response also suggests that Guilday does not allege a violation which continued throughout the 1960's and up to the present.

16. Since the Court rules that Guilday has no valid claim under 42 U.S.C. § 1981 or the Fifth Amendment, there is no need to address defendants' argument that the principle of sovereign immunity would bar any effective relief under § 1981.

17. Guilday did subsequently amend his 1972 administrative complaint to charge two of his superiors in the Philadelphia office with religious discrimination. However, this charge appears to have been directed only at these two individuals, rather than at INS policy in general. Furthermore, the charge was apparently grounded on several discrete acts which occurred during September, 1972. *See,* Affidavit of Peter W. Guilday, October 10, 1972, contained in Record accompanying 1972 administrative complaint, *supra* at [67–70]; Report of Investigation, E.E.O. PHI 1–72, Equal Employment Opportunity Complaint of Peter W. Guilday, at 2, contained in Record accompanying 1972 administrative complaint, *supra,* at [64].

discrimination. According to Guilday's complaint in this case, when Guilday filed his 1972 administrative complaint an Equal Employment Opportunity Counselor checked "race" and "religion" on a work form, in addition to noting the claim of reprisal, because there was no check block for a charge of reprisal. The Equal Employment Opportunity Counseling Check List, dated September 18, 1972, which appears in the administrative record, indicates that the counselor checked "religion" and added the following statement:

> The complainant states that a continuing pattern and practice of discrimination exists and prevents his advancement in the Service. He feels that he is being discriminated against because he raised an allegation of discrimination with the Agency on grounds of race and religion before.

See, U.S. Civil Service Commission, Record accompanying 1972 administrative complaint at [98]. At several points during the administrative hearing, Guilday mentioned that while his claim was directed toward reprisal, the government had attempted to introduce the issues of racial and religious discrimination. See, Transcript of hearing held at United States Immigration and Naturalization Service . . . Philadelphia, Pa., February 15, 1973, supra, at 10, 58. The decision of the complaints examiner listed two issues to be considered: whether Guilday had suffered reprisals as a result of his prior discrimination complaints, and "whether the District Director and the Assistant Director for Investigations (both Jewish), Immigration and Naturalization Service, Philadelphia discriminated against the complainant because of his race (white), or religion, (Christian)." The complaints examiner recommended a finding of no reprisal and "a finding of no evidence of discrimination because of the complainant's race or religion". See, Statement of Findings, Analysis, and Recommended Decision in the Appeal of Mr. Peter W. Guilday, March 12, 1973, at 2, 11–12, contained in Record accompanying 1972 administrative complaint, supra, at [16, 25–26].

The Court has made a careful examination of the administrative record which accompanies Guilday's 1972 administrative complaint, in order to determine whether it contains a claim or findings as to continuing discrimination on the basis of race and religion, which would include the allegations of the 1968 administrative complaints. The record indicates that while Guilday discussed numerous matters in the course of the hearing on his 1972 administrative complaint, the thrust of his presentation and the vast majority of his remarks and the remarks of others concerned his claim of reprisal for the filing of discrimination complaints, rather than any racial or religious discrimination. Guilday clearly intended that his complaint address only matters of reprisal, and certain limited acts of discrimination on the basis of religion. During the course of the administrative hearing on the 1972 complaint, Guilday explicitly rejected the Equal Employment Opportunity Counselor's interpretation of his complaint to include racial and religious discrimination. See, Transcript of hearing held at United States Immigration and Naturalization Service . . . Philadelphia, Pa., February 15, 1973, supra at 10. Furthermore, any racial or religious discrimination considered by the complaints examiner appears to have been based only on Guilday's experience during the time he worked in the Philadelphia office. See, Statement of Findings, Analysis, and Recommended Decision in the Appeal of Mr. Peter W. Guilday, March 12, 1973, contained in Record accompanying 1972 administrative complaint, supra, at [15–26]. The Court concludes that Guilday's 1972 administrative complaint cannot be said to address the type of continuing violation which would cover the broad allegations which form the basis for the 1968 administrative complaints.

To summarize, the history of this case indicates that Guilday chose not to pursue his 1968 claims of racial and religious discrimination in federal court until 1973. Not only were those claims stale by that time, but Congress had enacted a new scheme of administrative and judicial relief addressed to discrimination against federal employees,

which the Supreme Court has held to be preemptive of other avenues of relief. Given this situation, Guilday was required to reframe any broad claim of continuing discrimination to meet the requirements of Title VII. Since he failed to do so, the Court concludes that Guilday's 1968 administrative complaints may not form a basis for this action.[18]

## II. SUBSTITUTION OF DEFENDANTS

In Guilday's original complaint, he named as defendants the Department of Justice, the INS, and five individual officers or employees of INS. However, the defendants point out that Title VII of the Civil Rights Act of 1964, as amended, provides that the sole proper defendant to a federal employee's claim of discrimination under Title VII is the head of that employee's agency.[19] Thus, defendants urge that the Court should dismiss the action against all of the named defendants, and should substitute Griffin Bell, the Attorney General of the United States, as the sole defendant. Guilday agrees that the Title VII claim may be dismissed as to all of the named defendants, but urges that the sole proper defendant is the present Immigration and Naturalization Service Commissioner.

The wording of Title VII leaves the Court considerable discretion to decide which defendant is the "appropriate" one. Some courts have concluded that the Cabinet Department head is the proper defendant,[20] while others have held that the head of the agency or unit within a Cabinet Department is the proper defendant.[21] In this case, Guilday has worked for the INS since 1961. He claims that all acts of discrimination and reprisal took place within the INS and were perpetrated by INS officials. Thus, the head of the INS appears to be the more appropriate defendant. The Court holds that the present Immigration and Naturalization Service Commissioner should be substituted as defendant for the purposes of the Title VII claims, and that Title VII claims against the defendants named in the original complaint should be dismissed.[22]

## III. PUNITIVE DAMAGES

Defendants urge the Court to rule at this time that Guilday may not recover punitive damages in this action. While Guilday's complaint does not specifically request pu-

18. It is understandable that a plaintiff in Guilday's position may feel some frustration at this result. At least one commentator has noted the inadequacy of the Title VII process in accommodating federal employees' claims of continuing discrimination. See, McManis, Racial Discrimination in Government Employment: A Problem of Remedies for Unclean Federal Hands, 63 Geo.L.J. 1203, 1208–09 (1975).

It is highly regrettable that the defendants in this case did not raise their arguments as to dismissal of the claims based on the 1968 administrative complaints at an earlier stage of this lawsuit. Had they done so, less effort might have been expended in discovery, and Guilday might have chosen to pursue additional administrative relief.

19. 42 U.S.C. § 2000e–16(c) provides that a federal employee or an applicant for federal employment "if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant."

20. Jones v. Brennan, 401 F.Supp. 622, 627 (N.D.Ga.1972) (Secretary of Labor, rather than regional manpower administrator, was proper defendant); Brooks v. Brinegar, 391 F.Supp. 710, 711 (W.D.Okl.1974) (Secretary of Transportation was proper defendant).

21. Schenck v. Pyles, 13 E.P.D. ¶ 11,312 (D.D.C. 1976) (head of Federal Aviation Administration, rather than Secretary of Transportation, was proper defendant); Haire v. Calloway, 385 F.Supp. 309, 310 (E.D.Mo.1974), vacated on other grounds, 537 F.2d 318 (8th Cir. 1976) (Secretary of Army was proper defendant); Jones v. United States, 376 F.Supp. 13, 14 at n. 3 (D.D.C.1974) (Agency for International Development Administrator was proper defendant).

22. Mr. Thornton, the Department of Justice attorney who argued this motion, indicated at oral argument that defendants had no objection to this resolution of the issue.

This ruling includes dismissal of any INS officials who may have been substituted for their predecessors pursuant to Fed.R.Civ.P. 25(d)(1), except for the present INS Commissioner.

nitive damages, his amended complaint requests "such other relief as is equitable and just". In response to one of defendants' interrogatories, Guilday has stated that he claims punitive damages.

Since no claim for punitive damages is stated explicitly in the complaint, it would be inappropriate to "dismiss" such a claim. However, this Court considers it incumbent upon it to point out that the Third Circuit has held as a matter of law that punitive damages may not be recovered in actions under the 1972 amendments to Title VII. *Richerson v. Jones*, 551 F.2d 918, 926 (3d Cir. 1977). Other courts have reached the same conclusion. *See, e. g.,* cases cited in *Richerson, supra,* 551 F.2d at 926 n. 13. *See also,* B. Schlei & P. Grossman, *Employment Discrimination Law,* at 1258 (1976).