Kathleen T. HART, Appellant,

v.

J. T. BAKER CHEMICAL COMPANY.

No. 78–1989.

United States Court of Appeals,
Third Circuit.

Argued Feb. 12, 1979.

Decided May 14, 1979.

Yvette Weiss (argued), Copeland & Weiss, Trenton, N. J., for appellant.

Harry Reagan, Allen J. Gross (argued), Morgan, Lewis & Bockius, Philadelphia, Pa., for appellee.

Before ALDISERT, ADAMS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

At issue in this appeal is whether the time limits for the filing of a charge under Title VII of the Civil Rights Act of 1964 [1] are jurisdictional or whether they are subject to equitable tolling. We hold that the time limits are not jurisdictional but are subject to tolling. We affirm, however, the lower court's refusal to toll the time period under the facts of this case.

### I.

The plaintiff, Kathleen T. Hart, a biochemist, was hired by the defendant, J. T. Baker Chemical Company, in January, 1973 and discharged on July 29, 1973.[2] In December, 1973, while seeking employment elsewhere, the plaintiff alleged she first discovered that her discharge by the defendant may have been based upon the fact that she was a woman.[3]

Her first contact with the Equal Employment Opportunity Commission (EEOC) was by letter dated September 22, 1974, 421 days after her discharge. On November 17, 1974, she filed a formal charge with the EEOC. This was referred by the EEOC to the New Jersey Division on Civil Rights on May 27, 1975. On June 5, 1975, the New Jersey Division on Civil Rights waived jurisdiction over the charge to the EEOC which issued a "right to sue" letter on March 6, 1976.

On May 10, 1976, Hart filed a *pro se* complaint with the district court charging the defendant with violating Title VII of the Civil Rights Act of 1964.[4] Specifically, she alleged that the defendant discharged her and gave her adverse employment references because of her gender. In addition, her amended complaint filed on September 27, 1976 set forth a second count alleging interference with her "prospective [e]conomic advantage and contractual relations with prospective employers." Amended Complaint ¶ 1.

On July 22, 1976, the defendant moved to dismiss the complaint contending that the court lacked subject-matter jurisdiction under Title VII because Hart failed to file a timely charge with the New Jersey Division on Civil Rights or with the EEOC. The district court denied the motion without prejudice noting that the motion could be renewed following discovery.

Following the completion of discovery, the defendant filed a motion for summary judgment which was granted in its favor with regard to Hart's claims alleging discriminatory adverse references and refusal to rehire. The district court, applying principles of equitable tolling to the time limita-

---

1. 42 U.S.C. § 2000e–5(e) provides in pertinent part, as follows:

   A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge . . . shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency . . . , such charge shall be filed . . within three hundred days after the alleged unlawful employment practice occurred.

2. At the time of her discharge, she was given four reasons for her termination: (1) inability to understand Food and Drug Administration

regulations; (2) inability to prepare a Food and Drug Administration submission; (3) inability to work against time deadlines; and (4) inability to get along with company executive personnel. Deposition of Kathleen T. Hart, August 5, 1977, p. 31; Supplemental Appendix at 3.

3. The plaintiff alleged that in December, 1973, she was told by Ms. Dana Sharkey, a counselor with the Pennsylvania Bureau of Employment Security, that Dr. Anthony D'Eustachio, plaintiff's immediate supervisor at J. T. Baker, told Sharkey that the plaintiff was "bowled over by aggressive men at the working level." Deposition of Kathleen T. Hart, August 5, 1977, at 39; Supplemental Appendix at 6.

4. 42 U.S.C. § 2000e *et seq.*

tion in Title VII and further finding that a 300-day, rather than 180-day time period applied to the filing of Hart's charge with the EEOC, denied the motion for summary judgment as to the alleged discriminatory discharge.

The defendant then filed a motion for reconsideration of the partial denial of summary judgment. The district court vacated its earlier ruling and entered summary judgment in favor of the defendant. The district court held that Title VII's filing requirements may under certain circumstances be subject to equitable tolling, but, on the facts of this case, declined to invoke its equitable discretion and toll the filing requirements. The court held further that the date of her discharge triggered the running of the limitations period. Because she failed to file her charge with the EEOC within 180 days of her discharge, her untimely filing left the district court without subject-matter jurisdiction over all claims in the complaint.

Hart contends that the time limitation should be tolled from the date of her discharge, July 29, 1973, until December, 1973, the time when she was advised by the Pennsylvania Bureau of Employment Security that J. T. Baker had given an allegedly discriminating reference. We are thus asked to hold that the time limits for the filing of a charge are subject to tolling and that the facts of this case provide a basis for tolling. Assuming we so hold, the plaintiff next asks us to hold the extended 300-day filing period applicable, thus making her filing of September 22, 1974 timely.

## II.

■ The first issue we address is whether the filing of a charge of employment discrimination within the 180-day period provided for in Title VII is "jurisdictional" in that failure to comply is an absolute bar to

bringing an action or whether the time limitation is more analogous to a statute of limitations and therefore subject to equitable modifications, such as tolling. Defendant relies on a number of cases which state that timely filing is a "jurisdictional prerequisite" to maintaining an action. The question whether the filing requirement is jurisdictional is still open in this circuit. *Stuppiello v. ITT Avionics Division*, 575 F.2d 430, 432 n. 4 (3d Cir. 1978). Upon consideration of the cases and the underlying beneficent purposes of the statute, we are convinced that failure to file a timely charge should not serve, under all circumstances, as an absolute bar to maintaining an action for employment discrimination. We conclude, therefore, that the 180-day period is not jurisdictional.

■ We believe that broad remedial legislation such as Title VII is entitled to the benefit of liberal construction. In *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 192–193 (3d Cir. 1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), we stated:

Our conclusion that the 180-day period is not jurisdictional is based on our view of the design and purposes of the Age Discrimination in Employment Act. This Court has recognized that the ADEA is remedial and humanitarian legislation which should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment.[5]

The underlying rationale in *Bonham* of interpreting humanitarian legislation in a humane and commonsensical manner applies with equal force to Title VII, the avowed purpose of which "is to eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment based on race, color, religion, or na-

5. *See also Holliday v. Ketchum, MacLeod & Grove, Inc.*, 584 F.2d 1221, 1229 (3d Cir. 1978) (en banc) (Since the ADEA "is remedial legislation . . . [it] is entitled to be liberally construed.") In *Holliday v. Ketchum*, we held that the procedural provisions of the ADEA, which were derived from the Fair Labor Stan-

dards Act, 29 U.S.C. §§ 201 *et seq.*, should not be interpreted by analogy to the similar provisions in Title VII. But here, we are relying not on the similar *procedural* provisions of the ADEA and Title VII, but on a *substantive* policy which they share—the remedial and humanitarian goal of ending discrimination.

tional origin." H.R.Rep. No. 914, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Admin.News, p. 2401.

■ The Act contemplates that complaints will be initiated with the Equal Employment Opportunity Commission by lay persons unfamiliar with the complexities of the administrative procedures. It is therefore reasonable for courts to be flexible in appropriate cases when reviewing failures by aggrieved persons to comply with procedural technicalities. *See Love v. Pullman*, 404 U.S. 522, 526–527, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). In order to effectuate the broad remedial purposes of the Civil Rights Act of 1964 and of Title VII, the time limitations should not be treated as inflexible jurisdictional prerequisites, but should be subject to equitable modifications.

We believe that the approach we now adopt will prevent harsh results in particular cases. Where the filing requirements are considered "jurisdictional," non-compliance bars an action regardless of the equities in a given case. Thus equitable tolling could not be invoked where, for example, the employer prevented the employee from asserting his or her rights by actively concealing or misleading the discharged employee as to the true reasons for the discharge. We conclude therefore that the timing provisions should be subject to a similar type of equitable tolling as is applied to statutes of limitations.

The defendant urges, however, that Supreme Court precedent, most notably *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), requires us to hold that the time limit for the filing of a charge is jurisdictional. We disagree.

First, it is not clear from any of the Supreme Court's decisions why these prerequisites are "jurisdictional" as opposed to procedural or why they are not simply conditions precedent. The jurisdictional portion of Title VII is not qualified and does not withdraw jurisdiction with respect to claims not timely filed. It provides:

Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of section 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

42 U.S.C. § 2000e–5(f)(3).

Second, the genesis of the term "jurisdictional prerequisite" demonstrates that the term has crept into Title VII jurisprudence with no explication of its underlying logic and thus no real guidance in determining its applicability. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court was called upon to decide whether the absence of an EEOC finding of reasonable caused barred suit under Title VII. In deciding the question, the Court stated:

Respondent satisfied the jurisdictional prerequisites to a federal action (i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue, 42 U.S.C. §§ 2000e–5(a) and 2000e–5(e). The Act does not restrict a complainant's right to sue to those charges as to which the Commission has made findings of reasonable cause, and we will not engraft on the statute a requirement which may inhibit the review of claims of employment discrimination in the federal courts.

411 U.S. 792, 798, 93 S.Ct. 1817, 1822 (1973). We have previously characterized the Court's language on jurisdictional prerequisites, as dictum, *Bonham v. Dresser Industries, Inc.*, 569 F.2d at 192, and we adhere to that view. We note, however, that subsequent Supreme Court cases have seized upon this language as a basis for their holdings. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976).

We do not, however, rest our conclusion that the time limits are subject to tolling merely on disparaging the origins of the term "jurisdictional prerequisite." Rather, we construe *Electrical Workers v. Robbins & Myers, Inc.* as leaving open the possibility of tolling in certain limited cases. While the Court rejected the argument that the time limits under Title VII should be tolled during the pendency of a grievance-arbitration procedure, it nonetheless implied that tolling might be appropriate:

> In no way is this a situation in which a party has "been prevented from asserting" his or her rights, *Burnett v. New York Central R. Co., supra*, 380 U.S. at 429, 85 S.Ct. at 1055. There is no assertion that Guy was "prevented" from filing a charge with the EEOC within 90 days of October 25, 1971; indeed, it is conceded and even urged that she could have filed it the following day, had she wished.

429 U.S. at 237 n. 10, 97 S.Ct. at 447 n. 10. The Court distinguished the case before it from *Burnett* because the plaintiff in *Electrical Workers* had not been prevented from asserting her rights; instead, her late filing resulted from her choice to pursue alternative remedies. This is consonant with common law principles that statutes of limitations may be tolled as a result of fraudulent concealment by the defendant.[6]

In this connection, the Second Circuit in *Smith v. American President Lines, Ltd.,*

571 F.2d 102, 109 n. 12 (2d Cir. 1978), interpreted *Electrical Workers* to permit tolling and stated:

> The primary consideration underlying statutes of limitations is that of fairness to the defendant. It is believed that the defendant should not be called upon to defend a suit when "evidence has been lost, memories have faded and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). The most common and justifiable of the exceptions to the running of statutes of limitations is based upon affirmative acts of the defendant which have impeded suit.

On balance, we hold that the time limits for the filing of a charge are not jurisdictional but are rather subject to the principles of equitable tolling.

### III.

Although we hold that the time limitations for filing a charge are not jurisdictional, we nevertheless conclude that the district court, under the applicable equitable doctrines, did not err in finding that the facts of this case do not warrant tolling the filing requirements.

The plaintiff was discharged by the defendant on July 29, 1973. It was not until September 22, 1974, 421 days after her discharge, that she wrote to the EEOC advising that agency of the defendant's alleged discriminatory conduct. In this regard, the district court, in a thoughtful opinion, stated:

> In this letter, the plaintiff revealed the four reasons given to her for her termination. Additionally, she complained that her former supervisor was giving prospective employers adverse references. Finally, the plaintiff speculated that her sex may have been a factor in her termination, noting that a male biochemist in her department whom her supervisor constantly complained about was not dis-

---

6. *See, e. g.,* 51 Am.Jur.2d *Limitation of Actions* § 147 (1970); 54 C.J.S. *Limitations of Actions* § 206 (1948).

charged. She stated, "I wonder if I might still be working [were] I male." Plaintiff's letter of September 22, 1974 to EEOC at 2. *No mention was made of the alleged statement made by her supervisor in December of 1973, that plaintiff was bowled over by male aggressiveness.* Appendix at 43. (emphasis supplied).

On November 17, 1974, 477 days after her discharge, Hart filed a formal charge of employment discrimination with the EEOC which recited the same allegations contained in her September 22 letter. Thus, the facts upon which her charge was predicated were known to her on the date of her discharge.

The plaintiff contends that the period of limitation should have begun to run not on the date of termination but rather on the date when she claims that she could first have reasonably discovered that her dismissal may have been discriminatory. According to plaintiff, some time in December, 1973 she became aware of the alleged adverse references being supplied to prospective employers by defendant. However, by her own admission, at the time of her firing she suspected that the discharge may have been related to her sex.[7] In addition, this court is, as was the district court:

> disturbed by the extended period of time between the discharge and the first letter to the EEOC, a period of 421 days. Clearly, in the absence of evidence that the defendant contributed to this delay, it may be extremely unfair to the defendant to require its defense of this litigation. See *Smith v. American President Lines, supra,* 571 F.2d at 109, n. 12.

Opinion on Defendant's Motion for Reconsideration at 8–9.

As a result, it cannot be said that the district court erred in deciding that at the time of plaintiff's discharge, her suspicions were sufficient to lead a reasonable person to inquire further into the reasons for her discharge. Accordingly, the district court committed no reversible error in declining to toll the filing requirements of Title VII.

#### IV.

Finally, the plaintiff never filed the requisite charge with the New Jersey Division on Civil Rights. Rather, her charge was deferred by the EEOC to that agency on May 27, 1975, some twenty-two months after her discharge.[8] The language of Section 706, 42 U.S.C. § 2000e–5(e), makes it abundantly clear that the extended 300-day time limit for filing a charge with the EEOC is not applicable absent an initial filing with a state or local agency. Moreover, even if the 300-day time limitation were appropriate, the charge filed with the EEOC on November 17, 1974, 477 days after her discharge, would still be untimely. The 300-day time limitation is significant, therefore, only if December, 1973, rather than the date of her discharge, were held to trigger the running of the limitation period. Because we hold that the district court committed no reversible error in declining to toll the time limits in this case from the date of her discharge to December, 1973, the plaintiff's argument for an extended filing period is no longer apposite.

#### V.

For the foregoing reasons, the judgment of the district court will be affirmed.

---

7. At her deposition she testified that the "bowled over" remark:

> wasn't the first indication I had that [my discharge] was sex related, but it was the first confirmation that it was sex related. In view of the fact that he [Dr. D'Eustachio] had complained about Shapiro the male biochemist and Shapiro was not separated, I began to wonder why he never said anything to me, but he separated me. That was my first

indication that there was some difference in treating the sexes differently. Deposition of Kathleen. T. Hart, August 5, 1977, pp. 44–45; Supplemental Appendix at 8–9.

8. The New Jersey Employment Discrimination Act requires that a charge of discrimination be filed with a state agency within 180 days of the alleged discriminatory act. N.J. Stat. Ann. 10:5–18 (West 1976).