Wayne C. **TRADER** et al., Plaintiffs,

v.

**FIAT DISTRIBUTORS, INC., and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 326, Defendants.**

Civ. A. No. 76–249.

United States District Court,
D. Delaware.

Aug. 23, 1979.

Sheldon N. Sandler, Bader, Dorsey & Kreshtool, Wilmington, Del., for plaintiffs; Kenneth L. Johnson and Larry W. Newell, Johnson & Smith, P. A., Baltimore, Md., of counsel.

Leonard L. Williams, Wilmington, Del., for plaintiffs Barnes and Jones.

Russell J. Willard, Jr., Hastings & Willard, Wilmington, Del., for defendant Fiat Distributors, Inc.; Ronald M. Green, and Robert L. Jauvtis, Epstein Becker Borsody & Green, New York City, of counsel.

Francis S. Babiarz, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant Local 326.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This case is an action for equitable and legal relief to redress an alleged deprivation of rights, privileges, and immunities secured to plaintiffs and the class they seek to represent under the Constitution and laws of the United States. Specifically, plaintiffs seek back pay and an injunction against defendants, Fiat Distributors, Inc., ("Fiat") and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local 326 ("Local 326"), barring them from engaging in discriminatory practices with respect to recruitment, job classifications, hiring, referrals, assignments, promotions, transfers, layoffs, recalls, discipline, discharges, benefits, apprenticeship training programs, compensation, and other conditions and privileges of employment. In addition, plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 (1970) of their right and that of the class they seek to represent to equal employment opportunity without discrimination based on race.

The claims asserted by the plaintiffs are alleged to arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Fair Labor Standards Act of 1938, 29 U.S.C. § 206 et seq. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(4) and 42 U.S.C. § 2000e et seq.

Plaintiffs, black employees of Fiat, filed their original complaint on August 6, 1976, alleging that Fiat engaged in a pervasive pattern and practice of race and sex discrimination at its plant in Wilmington, Del-

aware. Plaintiffs' complaint also charged that Local 326 discriminated against them by failing to fairly represent them in seniority matters and other terms and conditions of their employment with Fiat.

On August 26, 1976, Fiat and Local 326 filed motions to dismiss, asserting that the complaint failed to state a claim upon which relief could be granted and that the Court lacked jurisdiction over the subject matter of the complaint. (Doc. No. 4). At the defendants' request, the Court stayed the action to allow all parties sufficient time to engage in conciliation efforts with the Equal Opportunity Employment Commission. (Doc. Nos. 17 and 22). Unfortunately, conciliation efforts proved unsuccessful and the Court heard oral argument on the defendants' motions to dismiss in September, 1978. (Doc. No. 35). As a result of that hearing, the plaintiffs filed an amended complaint on October 16, 1978.

The case is presently before the Court on motions brought, pursuant to Rules 8(a) and 12(b)(6) F.R.Civ.P., to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Renewing their previous arguments, defendants seek dismissal of this action with prejudice pursuant to Rule 41(b) F.R.Civ.P. on the grounds that the amended complaint contains only broad and conclusory allegations which do not satisfy the pleading requirements of Rule 8(a) F.R.Civ.P. (Doc. Nos. 36 and 37).

In the event the Court fails to dismiss the amended complaint, defendants press the following additional arguments:

1. That they are entitled to recover the attorneys' fees incurred in making the instant motion.

2. That the Title VII claims of plaintiffs William R. Hugee,[1] Raymond E. Jones, and Marcus P. Brunswick should be dismissed for failure to properly file suit within the ninety day time period specified in 42 U.S.C. § 2000e–5(f)(1).

3. That plaintiff Janice Wilson's claim of sex discrimination should be dismissed as it had been previously withdrawn by the plaintiffs.

4. That 10 Del.C. § 8111 (1974) bars all of plaintiffs' claims for back pay under the 1866 Civil Rights Acts which antedate the filing of the original complaint by more than one year, exclusive of the unlawful discharge claims.

The Court will first analyze the sufficiency of the allegations in the plaintiffs' amended complaint[2] and then address the alternative arguments raised by the defendants' motions.

### I. The Title VII and Section 1981 Allegations

All civil actions, including civil rights cases, are governed by the requirement that any pleading setting forth a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) F.R.Civ.P. Although notice pleading is generally sufficient, it is well established in this Circuit that civil rights complaints, especially those drafted by experienced counsel, must set forth with specificity the acts of each defendant that are alleged to have violated plaintiff's civil rights.[3] See Hall v.

---

1. Defendant, Local 326, does not join Fiat in this argument. Rather, Local 326 argues that Hugee's Title VII action should be dismissed for failure to exhaust administrative remedies.

2. In considering defendants' motion to dismiss, the Court is guided by the principle that the allegations of the complaint must be accepted as true. Hall v. Pennsylvania State Police, 570 F.2d 86, 89 n.1 (3d Cir. 1978); Bond v. County of Delaware, 368 F.Supp. 618, 621 (E.D.Pa. 1973). In addition, plaintiffs are entitled to any favorable inferences arising out of facts pleaded. Ammlung v. City of Chester, 355 F.Supp.

1300, 1303 (E.D.Pa.1973), aff'd, 494 F.2d 811 (3d Cir. 1974).

3. Although the specific pleading rule was formulated in suits brought under the Civil Rights Act of 1871, see Kauffman v. Moss, 420 F.2d 1270 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); Rotolo v. Borough of Charleroi, 532 F.2d 920 (3d Cir. 1976), it has been applied to actions under the 1866 Civil Rights Act, see Hall v. Pennsylvania State Police, supra, as well as to cases under Title VII of the Civil Rights Act of 1964, see Flesch v. Eastern Pa. Psychiatric Institute, 434 F.Supp. 963 (E.D.Pa.1977).

*Pennsylvania State Police,* 570 F.2d 86 (3d Cir. 1978); *Rotolo v. Borough of Charleroi,* 532 F.2d 920 (3d Cir. 1976); *Robinson v. McCorkle,* 462 F.2d 111 (3d Cir.), *cert. denied,* 409 U.S. 1040, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972); *Kauffman v. Moss,* 420 F.2d 1270 (3d Cir.), *cert. denied,* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Negrich v. Hohn,* 379 F.2d 213 (3d Cir. 1967); *Euster v. Pennsylvania State Horse Racing Commission,* 431 F.Supp. 828 (E.D.Pa.1977); *MacMurray v. Bd. of Trustees of Bloomsburg State College,* 428 F.Supp. 1171 (M.D.Pa. 1977); *Scott v. University of Delaware,* 385 F.Supp. 937 (D.Del.1974). Explaining the rationale behind the specific pleading requirement in civil rights cases, the Third Circuit Court of Appeals stated:

> In recent years there has been an increasingly large volume of cases brought under the Civil Rights Act. A substantial number of these cases are frivolous or should be litigated in the State courts; they all cause defendants—public officials, policemen and citizens alike, considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at an early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims. *Rotolo v. Borough of Charleroi, supra* at 922, *quoting Valley v. Maule,* 297 F.Supp. 958, 960 (D.Conn.1968).

While the degree of specificity necessary to satisfy the more stringent pleading rule in civil rights cases will necessarily depend upon the legal theory asserted, the Third Circuit Court of Appeals has repeatedly emphasized that vague and conclusory allegations of legal deprivations that fail to state facts upon which to weigh the substantiality of the claim do not satisfy the requirements of Rule 8 F.R.Civ.P. *See Rotolo v. Borough of Charleroi, supra* at 922–23; *Kauffman v. Moss, supra* at 1275; *Negrich v. Hohn, supra* at 215. Rather, as Judge Steel recently noted in *Passerin v. Maher,* Civ. No. 79–166, Slip op. at 8 (D.Del. June 21, 1979)

[S]ome semblance of factual specificity is necessary to assure the Court that the wrong complained of not only has some basis in fact but also that it is of federal cognizance. *See Kedra v. City of Philadelphia,* 454 F.Supp. 652 (E.D.Pa.1978); *Marshall v. Electric Hose and Rubber Co.,* 65 F.R.D. 599 (D.Del.1974). In this regard, the most recent pronouncements of the Third Circuit teach that a civil rights complaint must specify, with a sufficient degree of particularity, the unlawful conduct allegedly committed by each defendant and the time and place of that conduct. *See Hall v. Pennsylvania State Police, supra* at 89; *Rotolo v. Borough of Charleroi, supra* at 922–23; *Environmental Aid, Inc. v. Goodard,* 433 F.Supp. 906, 912–13 (W.D.Pa.1977).

The complaint in the instant case alleges 35 separate counts of discriminatory conduct committed by defendants Fiat and Local 326. Because the allegations in the individual counts are essentially repetitious, no effort will be undertaken to analyze each count separately. Rather, the Court will examine a representative selection of the claims in order to provide some guidance to the plaintiffs in the preparation of their amended complaint.[4]

### A. Claims Against Fiat

1. In Count 5 of the amended complaint plaintiff, Donald DeVille, pursuant to 42 U.S.C. § 2000e *et seq.,* alleges:

> Plaintiff, Donald DeVille, was hired by the Defendant on June 25, 1975. He complains that the Defendant has discriminated against him because of his race, illustrated as follows: The Plaintiff filed his application for employment with Defendant on March 17, 1975, but was not hired until June 26, 1975. Whites filed applications for employment after the Plaintiff, and were hired before he was, thus granting them more seniority than the Plaintiff. Plaintiff was discriminated against in other terms and conditions of employment, including the Defendant's suspension, lay-off and discharge policies.

4. This assumes, of course, that plaintiffs will choose to amend their complaint a second time.

*COUNT 6. Against Defendant, Fiat Distributors, Inc.* Plaintiff, Donald DeVille, pursuant to 42 U.S.C. § 1981 makes claim as follows:

All of the facts as stated in Count 5 are herein incorporated by reference.

■ Fiat complains that these allegations fail to comply with the civil rights pleading requirements announced by the Third Circuit Court of Appeals as "DeVille does not even state that he was qualified for the employment sought at the time he made application. He does not mention the job classification he sought to fill." (Doc. No. 39 at 14). Such detail is not required, however, to satisfy the Third Circuit's more stringent application of Rule 8(a)(2) in civil rights complaints. Mr. DeVille's allegations concerning Fiat's unlawful hiring practices sufficiently assert the manner in which Fiat's allegedly discriminatory conduct violated plaintiff's rights, the time period in which the conduct occurred, and the effects which that conduct had on plaintiff's employment opportunities with Fiat. In short, these allegations not only satisfy the underlying policy of *Kauffman* and its progeny, which is to assure the Court that the claim has some basis in fact, but also provide the defendant with adequate notice of the retroactive seniority claim asserted by plaintiff.

■ The remainder of plaintiff DeVille's complaint, however, is devoid of factual allegations to support the conclusionary charge that Fiat's suspension, layoff, and discharge policies discriminated against him. In preparing their amended complaint, plaintiffs should recognize that "facts as to when, how, to whom, and with what results such discrimination has been applied," *Ogletree v. McNamara,* 449 F.2d 93, 98 (6th Cir. 1971), would at least provide defendants with sufficient notice of the customs, policies, and practices that are being challenged as discriminatory. In addition, it would enable the Court to determine whether there is a reasonable basis for a federally recognizable claim under § 1981 and Title VII. *See Marshall v. Electric Hose & Rubber Co.,* 65 F.R.D. 599, 605 (D.Del.1974).

Thus, the Court concludes that the retroactive seniority claims contained in Counts 5 and 6 are sufficiently specific to satisfy the requirements of Rule 8(a) F.R.Civ.P. However, the general conclusory allegations concerning Fiat's suspension, layoff, and discharge policies mentioned in the final sentence of Counts 5 and 6 are too vague to support a cause of action under the Civil Rights Acts. Accordingly, the suspension, layoff, and discharge claims will be dismissed unless plaintiff amends his complaint pursuant to the order accompanying this opinion to specify, with a sufficient degree of particularity, facts upon which those claims are based.

Furthermore, the Court's analysis of Counts 5 and 6 applies with equal force to the allegations contained in Counts 14, 17, 18, 22, 26, and 35. In particular, William R. Hugee's § 1981 discharge claim (Count 14), Willie Barnes' Title VII and § 1981 seniority claim (Counts 17 and 18), Raymond E. Jones' § 1981 seniority claim (Count 22), Marcus P. Brunswick's § 1981 seniority and hiring claims (Count 26), and Janice Wilson's discharge and hiring claim (Count 35) are sufficiently precise to give notice of the claims asserted and withstand the defendants' challenge to its filing. All other allegations contained in the above-mentioned Counts of the complaint, however, are not sufficiently specific to comply with the decisional law of this Circuit. *See Rotolo v. Borough of Charleroi, supra; Negrich v. Hohn, supra.* Accordingly, those allegations will be dismissed unless plaintiffs' second amended complaint contains sufficient factual specificity in support of its general allegations of discriminatory conduct on the part of Fiat.

2. In Count 9 of the amended complaint plaintiff, Tony Garcia, pursuant to 42 U.S.C. § 2000e *et seq.* alleges:

Plaintiff, Tony Garcia, commenced his employment with the Defendant, Fiat Distributors, Inc., on July 9, 1974. He complains that the Defendant has discriminated against him because of his race, illustrated as follows: The Plaintiff was

retaliated against for opposing Defendant's employment practices by written warnings, reprimands and other forms of harassment. Further, Plaintiff was discriminated against, and Blacks as a class have been discriminated against, in the hiring and promotion policies of the Defendant in that the Defendant maintained preferential job assignments for whites over Blacks and segregated job classifications. Plaintiff as did Plaintiff's class received disparte [sic] treatment in other terms and conditions of his employment.

COUNT 10. *Against Defendant Fiat Distributors, Inc.* Plaintiff, Tony Garcia, pursuant to 42 U.S.C. § 1981 makes claim as follows:

All of the facts as stated in Count 9 are herein incorporated by reference.

■ While the dividing line between a sufficiently specific and a defective civil rights complaint is often difficult to measure, plaintiff's allegations in Counts 9 and 10 strike the Court as broad and conclusory. In particular, plaintiff's complaint contains no specific factual allegations supporting his claim of retaliation for unidentified opposition to nondelineated "employment practices" of defendant. Moreover, even assuming that plaintiff's allegations of preferential job assignments and segregated job classifications are true, and thus would be sufficient to state a cause of action under Title VII and § 1981, plaintiff's complaint is devoid of facts supporting those broad allegations of employment discrimination. Accordingly, the allegations contained in Counts 9 and 10 are not sufficient to support a cause of action under the Civil Rights Acts.

Furthermore, the Court's analysis of Counts 9 and 10 is equally applicable to every allegation contained in Counts 1, 2, 32, and 34 of the complaint. In conformity with the order accompanying this opinion, plaintiffs will be allowed 20 days within which to remedy these defective pleadings in their second amended complaint.

■ 3. In Count 29 of the complaint plaintiff, Norman F. Wilson, pursuant to 42 U.S.C. § 1981 alleges:

Plaintiff Norman F. Wilson, was hired by the Defendant, Fiat Distributors, Inc., on June 26, 1974. He complains that the Defendant discriminated against him because of his race, illustrated as follows:

The Plaintiff was assigned on the basis of his race to the job of "yardman". The Plaintiff and other Blacks were excluded from all positions such as yard leader, supervisor and other management positions except the "yardman" job classification solely because of their race while whites were and are still exclusively used to fill such positions solely on the basis of their race. Plaintiff was also discriminated against by the Defendant in job assignments, promotions, and in other privileges, terms and conditions of his employment because of his race.

While one can well contemplate a more specific set of allegations, detailing the positions for which Wilson applied, his qualifications for those positions and the reasons why he was rejected by Fiat, the complaint sufficiently asserts a discriminatory scheme on the part of Fiat to restrict blacks to the yardman job classification solely because of their race.[5]

The fact that Fiat allegedly restricts blacks as a class to the yardman employment classification is sufficient to assure the Court that the plaintiff's complaint states a cognizable claim under Title VII and § 1981. In addition, the Court notes that although plaintiff's complaint fails to specify the dates of Fiat's allegedly discriminatory practices, it nevertheless provides

---

5. The Court notes that the complaint was signed by counsel. Under Rule 11 F.R.Civ.P., "[t]he signature of an attorney constitutes a certificate by him that he has read the pleading; [and] that to the best of his knowledge, information, and belief there is good ground to support it." Because a "wilful violation" of Rule 11 may subject an attorney to "appropriate disciplinary action," the Court will assume that the plaintiff's claim regarding Fiat's exclusion of all blacks from any employment positions other than the yardman job classification is made in good faith.

Fiat with sufficient information regarding the nature of the claim asserted. Accordingly, the Court will not dismiss this portion of the complaint despite its serious shortcomings. Furthermore, the Court's analysis of Count 29 applies with equal force to Counts 30 and 31.

### B. *Claims Against Local 326*

Count 7, which contains the complaint of Donald DeVille, alleges:

*COUNT 7. Against Defendant Teamsters Local 326.* Plaintiff, Donald DeVille, pursuant to 42 U.S.C. § 2000e et seq., makes claim as follows:

Plaintiff, Donald DeVille, a former member of Defendant Teamsters Local 326, said membership commencing June 26, 1975 and ending in December 1976, complains that Defendant discriminated against him because of his race in that (1) Defendant Teamsters Local 326 entered into agreement with Defendant Fiat Distributors, Inc., the effect of which discriminates against Blacks as a class; and (2) Defendant failed to adequately represent Plaintiff and protect Plaintiff's interest with respect to hiring, seniority matters and other employment grievances pertaining to the terms and conditions of Plaintiff's employment under said agreement or otherwise.

*COUNT 8. Against Defendant Teamsters Local 326.* Plaintiff, Donald DeVille, pursuant to 42 U.S.C. § 1981 makes claim as follows:

All of the facts as stated in Count 7 are herein incorporated by reference.

In view of the Court's analysis of the allegations contained in plaintiffs' complaint against defendant Fiat, it is apparent that these charges against Local 326 do not satisfy the test of civil rights pleading articulated by the Third Circuit Court of Appeals. In short, the allegations are uniformly vague, broad, and conclusory and fail to state any facts upon which the claims of discrimination are based. Specifically, the complaint fails to identify the allegedly discriminatory agreement between Fiat and Local 326, the date of that agreement, the general contents of that agreement, or the effect that agreement exerts on plaintiff's employment opportunities with Fiat. In addition, the complaint is completely devoid of factual documentation supporting the allegations of unfair representation. While plaintiff's complaint does contain a list of generic activities in which Local 326 allegedly practices racial discrimination, "no inkling is given of the manner in which the alleged discrimination is carried out or perpetuated in those activities." *Marshall v. Electric Hose & Rubber Co., supra* at 605. Accordingly, plaintiff's complaint against Local 326 does not state a claim upon which relief can be granted.

Furthermore, the Court's analysis of Counts 7 and 8 is equally applicable in Counts 3, 4, 11, 12, 16, 19, 20, 23, 24, 27, 28 and 33. As provided in the order accompanying this opinion, plaintiffs will be granted 20 days within which to amend their § 1981 and Title VII allegations against Local 326.

### C. *Class Claim*

Defendants also challenge the allegations of class discrimination, arguing that the class claims are vague and conclusory. While the Court expresses no opinion at this time regarding the propriety of maintaining this suit as a class action, it notes that the class claims fail to state any facts in support of its conclusory allegations of racial discrimination. Nor do the individual claims provide factual support for the majority of class based allegations. For example, the individual complaints contain no facts indicating that the seniority system is utilized to perpetuate past racial discrimination, that Fiat fails to recruit black applicants for employment, that Fiat maintains racially segregated units, that discriminatory educational requirements are employed against blacks, or that Fiat uses a subjective arbitrary, rating system which discriminates against blacks.

The Third Circuit Court of Appeals has repeatedly emphasized that "[t]o accomplish the dual objectives of weeding out frivolous cases and keeping federal courts open to legitimate civil rights claims, courts should

allow liberal amendment of civil rights complaints under Fed.R.Civ.P. 15(a)." *Rotolo v. Borough of Charleroi, supra* at 923. Accordingly, all defective allegations against Fiat and Local 326 identified in this opinion, either expressly or by implication, will be dismissed unless plaintiffs amend their complaint within 20 days of the date of the order accompanying this opinion to comply with the Third Circuit's specific pleading requirements in civil rights cases.[6] *See, e. g., Hall v. Pennsylvania State Police, supra; Rotolo v. Borough of Charleroi, supra.*

## II. *Attorneys' Fees*

Fiat and Local 326 claim that they are entitled to an award of attorneys' fees for the legal expenses incurred in presenting their motions to dismiss the amended complaint. Defendants' argument, which amounts to a request that the Court impose sanctions on plaintiffs, is "based upon the fact that plaintiffs sought permission to amend the complaint, the Court granted such permission with the caveat that plaintiffs were to adhere to the *Scott* pleading standards, and that plaintiffs did not comply with the Court's directive." (Doc. No. 44 at 7).

The Court's authority to award attorneys' fees in lieu of an outright dismissal under Rule 41(b) F.R.Civ.P. apparently derives from the "wide range of lesser sanctions which [a court] may impose upon the . . derelict attorney . . . . The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 888 (5th Cir.), *cert. denied*, 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968). *See also Bardin v. Mondon*, 298 F.2d 235 (2d Cir. 1961); *Fischer v. Buehl*, 450 F.2d 950 (3d Cir. 1971).

■ The Court's analysis of the plaintiffs' amended complaint indicates that numerous allegations continue to suffer from severe pleading defects. However, the Court does not believe that plaintiffs' counsels' failure to comply with the specific pleading rule announced by the Third Circuit dictates that they personally pay the attorneys' fees generated by defendants' motion to dismiss. In addition, the Court is confident that it is unnecessary to impose financial sanctions on plaintiffs' counsel to obtain compliance with the decisional law of this Circuit. Accordingly, the Court will deny the defendants' request for attorneys' fees.

## III. *Plaintiff Janice Wilson's Pay Act Claim*

In Count 34 of the amended complaint, plaintiff Janice Wilson alleges that "Fiat failed to extend equal pay to her because of her sex," in violation of 29 U.S.C. § 206 *et seq.*[7] Defendant Fiat argues that this claim

---

6. See discussion in text, *supra* at 1197–1199.

7. 29 U.S.C. § 206(d)(1) provides as follows:
    Prohibition of sex discrimination
    (d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or

(iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

(2) No labor organization, or its agents, representing employees of an employer having employees subject to any provisions of this section shall cause or attempt to cause such an employer to discriminate against an employee in violation of paragraph (1) of this subsection.

(3) For purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this chapter.

should be dismissed as it was expressly withdrawn by plaintiff's "Memorandum in Reply," which was filed on October 7, 1976. (Doc. No. 13 at 1). A brief summary of the procedural background is necessary to place the matter presently before the Court in its proper perspective and to understand the controversy surrounding Ms. Wilson's equal pay act claim.

In the original complaint, filed on August 2, 1976, (Doc. No. 1 at 2, 9) Janice Wilson alleged that Fiat discriminated against her because of her sex. Specifically, Ms. Wilson claimed that she was assigned a sex segregated job position with Fiat, that she was paid less than male employees for equal work on identical jobs, and that she was terminated from her employment with Fiat because of her sex. Plaintiff's claims were alleged to arise under 42 U.S.C. § 1981, Title VII and 29 U.S.C. § 206. Rather than filing an answer to the complaint, Fiat moved to dismiss the allegations of sex discrimination on the ground that Section 1981 does not prohibit discrimination on the basis of sex. (Doc. No. 5 at 2). In addition, Fiat moved to dismiss the Title VII claim of sex discrimination because Ms. Wilson failed to initiate her sex discrimination claim with the Equal Employment Opportunity Commission, a procedural prerequisite to the maintenance of her Title VII action. Finally, Fiat moved to dismiss Janice Wilson's claim under the Equal Pay Act on the ground that it failed "to provide even the minimum degree of specificity required under Rules 8(a)(1) and 8(a)(2) of the Federal Rules of Civil Procedure." (Doc. No. 5 at 6).

In response to Fiat's motion, plaintiff filed a "Memorandum in Reply" on October 7, 1976, which asserted, without reservation, that "[a]ll claims of sex discrimination are hereby withdrawn." (Doc. No. 13 at 1). On October 26, 1976, Fiat filed a reply to plaintiff's "Memorandum in Reply" which stated:

> (4) As used in this subsection, the term "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

As originally filed, the complaint herein included allegations of sex discrimination by Fiat against Janice Wilson, one of the named plaintiffs, and an as yet unidentified class of persons she purported to represent, including an allegation that Fiat had violated the Equal Pay Act. In the memorandum opposing Fiat's instant motion, plaintiffs now declare that "[a]ll claims of sex discrimination are hereby withdrawn," (p. 1), without explanation. Although the language is imprecise, Fiat interprets this statement to be a withdrawal of the individual and class claims of sex discrimination, and also of any charges that Fiat has violated the Equal Pay Act. If it develops that this is not plaintiffs' intention, Fiat renews its challenges to the charges of sex discrimination and Equal Pay Act violations as set forth in Fiat's motion and in its memorandum in support thereof. (Doc. No. 20 at 2).

On October 26, 1976, the Court stayed the action to allow all parties sufficient time to engage in conciliation efforts with the Equal Employment Opportunity Commission. (Doc. No. 17). No formal action was taken by either party concerning Fiat's motion to dismiss Janice Wilson's Equal Pay Act claim until September 27, 1978, when the Court heard oral argument on the motion. Thereafter, the claim in its present form reappeared in the October 16, 1978 amended complaint.

Ms. Wilson argues that her reply memorandum of October 7, 1976, did not withdraw the equal pay claim under 29 U.S.C. § 206 et seq. To support this construction of the reply memorandum, plaintiff relies upon her attorney's statements at the September, 1978, hearing before the Court. At that hearing, plaintiff's counsel explained that all claims of sex discrimination pursuant to Title VII and § 1981 were withdrawn by plaintiff's "Memorandum in Reply," but

that "[e]qual pay is still in and we are moving for equal pay on behalf of Mrs. Wilson—or Ms. Wilson—and we'd like to make an argument to support that at this time." (Doc. No. 46 at 3–4).

Although the Court recognizes that plaintiff's counsel's representations regarding Ms. Wilson's Equal Pay Act claim are ambiguous, the Court is persuaded that the plaintiff's "Memorandum in Reply" did not withdraw her Equal Pay Act claim. In reaching this conclusion it is noted that plaintiff's failure to dispute Fiat's unambiguous construction of the withdrawal statement (contained in Fiat's brief filed on October 26, 1976) until the September, 1978, hearing is reasonably attributable to the fact that, by agreement of all parties, this action was stayed on October 26, 1976, to allow the parties sufficient time to engage in voluntary conciliation efforts with the Equal Employment Opportunity Commission. Thus, it is concluded that the interpretation of the withdrawal statement contained in Fiat's brief of October 26, 1976, did not reflect the parties mutual understanding regarding the scope of the sex discrimination claims that were withdrawn by Plaintiff's counsel on October 7, 1976. Rather, as defendant's brief of October 26, 1976, anticipated, plaintiff's counsel's arguments at the September, 1978, hearing clearly demonstrated that plaintiff's "Reply Memorandum" did not intend to withdraw the Equal Pay Act claim.

Moreover, the Court's examination of the transcript of the September, 1978, hearing reveals an agreement among both parties to allow the plaintiffs an opportunity to "start from scratch" by filing an amended complaint, delineating the precise issues to be litigated in the law suit. In this regard, plaintiff's counsel clearly indicated that Ms. Wilson's Equal Pay Act claim would be included among the various allegations contained in the amended complaint. Thus, the Court, consistent with the fresh start approach adopted by both parties at the September hearing, concludes that Ms. Wilson should not be foreclosed from asserting her equal pay claim due to some ambiguity in the record created by her counsel's representations. Accordingly, the defendants' motion to dismiss Ms. Wilson's Equal Pay Act claim will be denied.

The Court notes, however, that Ms. Wilson's Equal Pay Act claim, as presently stated, fails to satisfy the specific pleading requirements of Rule 8(a) F.R.Civ.P. Accordingly, this claim will be dismissed unless plaintiff amends her allegation to specify, with a sufficient degree of particularity, the facts upon which her Equal Pay Act claim is based.[8]

## IV. The Individual Title VII Claims of Plaintiffs Brunswick, Hugee and Jones

Defendant Fiat moves to dismiss the Title VII claims of the individual plaintiffs William Hugee, Raymond E. Jones and Marcus P. Brunswick (Counts 13, 21, and 25, respectively) on the ground that these plaintiffs failed to file the instant law suit within ninety days of receipt of their right to sue letters from the Equal Employment Opportunity Commission ("EEOC"). Defendant Local 326 moves to dismiss William Hugee's Title VII claim on the ground that Hugee (Count 15) failed to exhaust his administrative remedies by filing charges with the EEOC against Local 326 before proceeding in this Court.

Title VII of the Civil Rights Act of 1964 forbids employers and unions from discriminating on the basis of race, color, sex, religion, or national origin. Under the provisions of Title VII, a "person claiming to be aggrieved" is required to file a charge with the EEOC within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5[e]. Section 706(f)(1) of Title VII provides that if the EEOC dismisses a complaint, or fails to file suit or enter into a conciliation agreement to which the aggrieved person is a party within 180 days of the filing of the charge, the EEOC must notify the individual claimant. The statute further mandates that "within 90 days af-

8. See discussion in text, *supra* at 1197–1199.

ter the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved . . . ." 42 U.S.C. § 2000e–5(f)(1).

In *Hart v. J. T. Baker Chemical Co.,* 598 F.2d 829 (3d Cir. 1979), the Third Circuit Court of Appeals held that the 180-day time period for filing a charge under Title VII is not jurisdictional, but rather is subject to the principles of equitable tolling. *See also Stuppiello v. ITT Avionics Division,* 575 F.2d 430, 432 n.4 (3d Cir. 1978); *Garvin v. American Life Insurance Co.,* 416 F.Supp. 1087 (D.Del.1976). Although the appellate court did not address the 90-day time period for instituting federal court actions, its analysis of the underlying policy concerns supporting a liberal construction of the 180-day period indicates that the 90-day limitation is also subject to equitable tolling. Noting that broad remedial legislation such as Title VII is entitled to the benefit of liberal construction, *Hart* teaches:

> In *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 192–93 (3d Cir. 1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), we stated:
>
>> Our conclusion that the 180-day period is not jurisdictional is based on our view of the design and purposes of the Age Discrimination in Employment Act. This Court has recognized that the ADEA is remedial and humanitarian legislation which should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment.
>
> The underlying rationale in *Bonham* of interpreting humanitarian legislation in a humane and commonsensical manner applies with equal force to Title VII, the avowed purpose of which "is to eliminate, through the utilization of formal and informal remedial procedures, discrimination in employment based on race, color, religion, or national origin." H.R.Rep. No.914, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Admin.News p. 2401.

> The Act contemplates that complaints will be initiated with the Equal Employment Opportunity Commission by lay persons unfamiliar with the complexities of the administrative procedures. It is therefore reasonable for courts to be flexible in appropriate cases when reviewing failures by aggrieved persons to comply with procedural technicalities. *See Love v. Pullman,* 404 U.S. 522, 526–27, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). In order to effectuate the broad remedial purposes of the Civil Rights Act of 1964 and of Title VII, the time limitations should not be treated as inflexible jurisdictional prerequisites, but should be subject to equitable modifications.

(Footnote omitted.) *Id.* at 832.

■ Thus, the Court is convinced that the substantive policy of Title VII—to promote the humanitarian goal of ending employment discrimination—will be equally served by allowing plaintiffs, in appropriate cases, to institute federal court actions despite non-compliance with the 90-day filing period.

A. *The Title VII Claims Against Fiat*

Plaintiffs' original complaint, filed on August 2, 1976, alleged, among other things, a Title VII action on behalf of William R. Hugee, Raymond E. Jones, and Marcus P. Brunswick. (Doc. No. 1). Rather than filing an answer to the plaintiffs' original complaint, Fiat moved to dismiss the Title VII claims of the above-named plaintiffs on the ground that they had not received their requisite "right to sue notices" from the EEOC. (Doc. Nos. 4, 5). In its reply memorandum filed on October 7, 1976, to the defendants' motion to dismiss, the plaintiffs expressly stated that "[t]his Court's jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, . . . is sought to be invoked only as to the plaintiffs Wayne C. Trader and Tony L. Garcia, and the class that they represent. No Title VII jurisdiction is asserted as to any other named plaintiffs." (Doc. No. 13 at 1).

During January, 1978, Brunswick, Hugee and Jones received notices from the EEOC

informing them of their right to institute a federal court action against Fiat. Plaintiffs promptly filed these notices with the Clerk's office in the instant action. Defendant Fiat contends, however, that the mere filing of a right to sue notice is insufficient to institute a Title VII action in federal court. Specifically, Fiat asserts that "[s]ince by their own admission, Brunswick, Hugee and Jones had no viable Title VII claims when the action was commenced, the first true assertion of those claims took place by way of the amended complaint, served October 12, 1978, nearly nine months after the EEOC right to sue letters were received. . . . Plaintiffs Brunswick, Hugee and Jones are, therefore, obviously time-barred from asserting Title VII claims." (Doc. No. 39 at 33–34).

The record in the instant case reveals that plaintiffs Brunswick, Hugee and Jones did not institute their Title VII action against Fiat until almost nine months following receipt of their right to sue notices from the EEOC. While plaintiffs apparently contend that filing their right to sue notices satisfied the 90-day limitations period, it is axiomatic that "a civil action is commenced by filing a complaint with the court." Rule 3 F.R.Civ.P. Accordingly, plaintiffs' Title VII claims against Fiat were not properly asserted until October 12, 1978, the filing date of the amended complaint.

█ Although I have held that the 90-day limitation for filing a federal action is not jurisdictional, it is concluded that the facts of this case do not warrant tolling the filing requirements. The record does not suggest that Fiat was responsible for the plaintiffs' late filing. In fact, the record illustrates that plaintiffs' counsel, apparently aware of the limitations period, expressly advised the Court and the defendants that Hugee, Jones and Brunswick were not asserting Title VII claims on October 7, 1976. The most reasonable inference to be drawn from the current record, therefore, is that plaintiffs, individually, or through their attorney, simply neglected the limitations period in filing their Title VII actions. In short, the record does not contain any evidence indicating that Fiat prevented the plaintiffs from filing a timely Title VII action in this Court.[9] Therefore, the Court declines to toll the filing requirements of Title VII. Accordingly, plaintiffs Brunswick, Hugee and Jones' Title VII actions against Fiat (Counts 25, 13, and 21 respectively) will be dismissed.

**B.** *The Title VII Claim Against Local 326*

█ Local 326 argues that William Hugee's Title VII claim (Count 15) should be dismissed because Hugee failed to file any charges with the EEOC, a jurisdictional prerequisite to the maintenance of a Title VII action.[10] An examination of the right to sue notices attached to plaintiff's amended complaint (Doc. No. 35) fails to disclose that William Hugee lodged a complaint with the EEOC against Local 326. Plaintiff's counsel, however, assured the Court that Hugee filed charges against Local 326 with the Equal Employment Opportunity Commission before instituting this federal action. Indeed, plaintiff's counsel promised to forward a copy of the charge to the Court as soon as they received a verified copy from the EEOC. As of this date counsel has not produced the promised document. Because the record does not indicate that plaintiff Hugee filed a charge against

---

**9.** Because *Hart v. J. T. Baker Chemical Co.,* 598 F.2d 829 (3d Cir. 1979), was decided during the pendency of defendants' motions to dismiss, the Court, in a letter dated June 22, 1979, specifically requested that plaintiffs' counsel address the following issue: "The effect, if any, of the Third Circuit's opinion in *Hart v. J. T. Baker Chemical Co.,* 598 F.2d 829 (3d Cir. 1979), on the timeliness of plaintiffs Hugee, Brunswick, and Jones' federal court actions against defendant Fiat, . . . ." Plaintiffs' response to this question failed to state *any* reasons why the Court should toll the 90-day filing requirement with respect to plaintiffs Hugee, Brunswick and Jones.

**10.** Local 326 does not allege that plaintiffs Brunswick and Jones failed to file charges with the EEOC or that Brunswick and Jones failed to file the instant suit within 90 days of receipt of their right to sue notices.

Local 326 before proceeding in this Court, Hugee's Title VII claim against Local 326 will be dismissed.[11] If the record eventually demonstrates that Hugee properly exhausted his administrative remedies, plaintiff's counsel may seek appropriate relief at that time.

## V. Statute of Limitations—Back Pay

■ Congress has not prescribed a federal statute of limitations for causes of action arising under 42 U.S.C. § 1981. Therefore, "federal courts must ascertain the underlying cause of action under state law and apply the limitation period which the state would apply if the action had been brought in state court." *Jennings v. Shuman*, 567 F.2d 1213, 1216 (3d Cir. 1977); *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Wilson v. Sharon Steel Corp.*, 549 F.2d 276 (3d Cir. 1977). Furthermore, the Third Circuit has adopted the view that "each aspect of a complaint under sections 1981 or 1982 may be given separate statute of limitations treatment depending upon the nature of the specific act or acts complained of." *Meyers v. Pennypack Woods Home Ownership Association*, 559 F.2d 894 (3d Cir. 1977).

Section 8106 of Title 10 of the Delaware Code provides in part:

No action to recover damages for trespass, . . . no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of three years from the accruing of the cause of such action . . . ..

Plaintiffs argue, based upon Judge Latchum's holding in *Marshall v. Electric Hose & Rubber Co.*, 68 F.R.D. 287, 293 (D.Del. 1975), that 10 *Del.C.* § 8106 is the appropriate statute of limitations for this § 1981 action. In *Marshall*, Judge Latchum stated:

It has been held in this district that civil rights actions based on 42 U.S.C. § 1983 are governed by Delaware's three year statute of limitations. 10 Del.Code § 8106. *Travits v. Wilmington Institute*, 383 F.Supp. 457 (D.Del.1974); *Gordenstein v. University of Delaware*, 381 F.Supp. 718 (D.Del.1974). The interest protected and the evil sought to be remedied are similar under both § 1981 and § 1983, and no significant reason exists to justify differentiating between them for limitation purposes. Therefore, the claims based upon 42 U.S.C. § 1981 are controlled by a three year statute of limitations.

*Id.* at 293; *See Guilday v. Department of Justice*, 451 F.Supp. 717, 722 (D.Del.1978).

Defendants, on the other hand, argue that plaintiffs' claims for back pay arise from services actually performed during their employment with Fiat. Accordingly, they attempt to characterize the relief sought by plaintiffs as being in the nature of a claim for "wages" for work already performed, which is subject to a one year limitation period under 10 *Del.C.* § 8111.

The applicability of the one year and the three year statute of limitations was examined in *Goldman v. Braunstein's, Inc.*, 240 A.2d 577 (Del.Supr.1968). There appellant was employed for a year at a fixed salary, plus a bonus based on the percentage of annual net sales. He was discharged after working six months and filed an action for damages for "future services not performed," claiming that he was wrongfully discharged. The Supreme Court of Delaware, reasoning that § 8111 is restricted to claims for services actually and fully performed, found the one year statute inapplicable. Instead, the Court held that since appellant's work was uncompleted, his ac-

---

11. In addition, nothing in the record suggests that Local 326 was responsible for plaintiffs' failure to institute a timely action with the Equal Employment Opportunity Commission. The Court's letter of June 22, 1979, instructed plaintiffs' counsel to comment on the effect, if any, of *Hart v. Baker, see* note 9 *supra*, on the timeliness of Hugee's federal court action against Local 326. Plaintiffs' counsel failed to specify *any* circumstances that would warrant tolling the filing requirement of 42 U.S.C. § 2000e–5(f)(1).

tion was founded upon his underlying contractual promise of a salary and bonus. Accordingly, the Court found the action governed by the three year statute of limitations. *See also Wilmington Housing Authority v. Rocky Marciano Construction Co.,* 407 F.Supp. 228 (D.Del.1976); *Brown v. Colonial Chevrolet Co.,* 249 A.2d 439 (Del.Super.1968).[12]

■ Section 8111 covers claims "for wages, salary, or overtime for work, labor, or personal services performed" in which the action for unpaid wages constitutes the sole basis of the claim. *See Wilmington Housing Authority v. Rocky Marciano Construction Co., supra.* Plaintiffs' suit, contrary to the defendants' construction, does not seek unpaid wages for services actually performed. Rather, plaintiffs seek monetary damages, in the form of back pay, to compensate them for what they would have earned if defendant had not engaged in allegedly discriminatory practices with respect to hiring and promotion. In the context of this discrimination case, therefore, the request for back pay is merely a device to eradicate discrimination throughout the economy and to compensate plaintiffs for the discriminatory injuries which they allegedly suffered. That the amount of this compensation is measured by a calculation of lost wages, however, does not convert this suit into a mere claim for back pay within the meaning of § 8111, which is restricted to claims for services actually performed.[13]

Having concluded that plaintiffs' claims for back pay cannot be equated with an action for wages under § 8111, the Court is equally convinced that they are not based, as in *Goldman v. Braunstein's, Inc., supra,* on services not yet completed as to which a promise has been made. Therefore, the Court must apply the statute of limitations that Delaware courts would apply to state law actions seeking to redress the effects of past discrimination in the area of employment practices.

An examination of the Delaware limitations scheme indicates that there is no particular statute governing actions which seek redress from the effects of employment discrimination. Therefore, I conclude that the general residual clause of § 8106, *see Patterson v. Vincent,* 5 Terry 442, 44 Del. 442, 61 A.2d 416 (Del.Super.1948); *Read v. Local Lodge 1284, Intern. Association, Etc.,* 528 F.2d 823 (3d Cir. 1975), covering actions "to recover damages caused by an injury unaccompanied with force" governs plaintiffs' claims for back pay with respect to hiring and promotion. The conclusion that 10 *Del.C.* § 8106 is the applicable statute in the instant case "is consistent with the general rule that, if there is doubt as to which of two statutes of limitations applies, that doubt should be resolved in favor of the longer period." *Sonne v. Sacks,* 314 A.2d

---

12. This Court has held that § 1981 actions predicated upon an allegation of unlawful discharge or termination of the employment relationship are governed by the three year limitations period in 10 *Del.C.* § 8106. *Marshall v. Electric Hose & Rubber Co.,* 68 F.R.D. 287 (D.Del.1975); *Guilday v. Department of Justice, supra.* Accordingly, defendants do not contend that the allegations of Wayne C. Trader, William Hugee, and Janice Wilson regarding their layoffs or discharges are governed by the one year limitations period of § 8111.

13. But see *Boudreaux v. Baton Rouge Marine Contracting Co.,* 437 F.2d 1011, 1017 n.16 (5th Cir. 1971), where the Court reasoned:

Because appellees in the District Court argued that any § 1981 claim would be barred by the one year statute of limitations applicable to tort claims in Louisiana, LSA–C.C. art. 3536, we herein state our view for the guidance of the court on remand that the applicable statute of limitations is rather the ten year provision governing contract claims, LSA–C.C. art. 3544. It is, after all, the right to 'make and enforce contracts' which is protected by § 1981. . . . Such suits, insofar as they seek equitable relief, are, of course, also governed by the equitable doctrine of laches and the requirement that the plaintiff show the necessary degree of present or threatened future injury to support an equitable decree. However, to the extent that appellants here seek damages for loss of back pay, their claim would seem to be governed by LSA–C.C. art. 3534 which sets a one-year prescription on actions by 'workmen . . . for the payment of their wages.' *See also Johnson v. Goodyear Tire & Rubber Co.,* 491 F.2d 1364, 1378 n.48 (5th Cir. 1974).

194, 196 (Del.Supr.1973). In addition, it is noted that this view comports with the holding in *Guilday v. Department of Justice,* 451 F.Supp. 717 (D.Del.1978), which, while not addressing the applicability of § 8111, held that § 8106 applied to a § 1981 action seeking retroactive promotion with back pay. *See also Marshall v. Electric Hose & Rubber Co.,* 68 F.R.D. 287 (D.Del. 1975).[14]

14. On June 29, 1979, plaintiffs filed a motion to compel "Fiat Distributors, Inc., to answer numbers 117, 124, 125, 127, 130, and 136 of the Plaintiffs' First Set of Interrogatories filed with this Court on March 15, 1979." (Doc. No. 64). Plaintiffs' proposed order accompanying their motion, however, recites that plaintiffs' motion to compel compliance with discovery is directed against Teamsters Local 326. While the Court would not find it unlikely that plaintiffs' counsel merely confused the two defendants in this lawsuit, the Court is unwilling to make any further assumptions regarding plaintiffs' counsels' intentions in this case. Accordingly, plaintiffs will be granted 20 days from the date of the order accompanying this opinion to clarify the ambiguity in their proposed order and to refile their motion to compel compliance with discovery.